IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

RUBEN GONZALVO,

              Plaintiff,

v.

THE STATE OF NEW YORK,

              Defendant.

_____

Civil Action. No.
9:11-CV-0909 (NAM/DEP)

APPEARANCES:

FOR PLAINTIFF:

RUBEN GONZALVO, *pro se*
97-A-3050
Woodburne Correctional Facility
99 Prison Road
P.O. Box 1000
Woodburne, N.Y. 12788-1000

FOR DEFENDANTS:

HON.ERIC T. SCHNEIDERMAN
Office of the Attorney General
State of New York
The Capitol
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

OF COUNSEL:

CATHY SHEEHAN, ESQ.
Assistant Attorney General

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Ruben Gonzalvo, a New York State prison inmate, has commenced this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, and section 504 of the Rehabilitation Act ("section 504"), 29 U.S.C. § 794. In his complaint, Gonzalvo generally alleges that, as a qualified individual with a disability under the ADA, the defendant, the State of New York, wrongfully denied him the right to participate in or the benefit from sign language classes.

Currently pending before the court is the State of New York's motion seeking dismissal of plaintiff's complaint based upon its assertion that the court lacked jurisdiction to *sua sponte* deem plaintiff's complaint amended to substitute the State of New York as the sole defendant. Having carefully reviewed defendant's motion, I recommend that the motion be denied.

## I.   BACKGROUND

Plaintiff is a prison inmate who is now being held in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"). *See generally* Compl. (Dkt. No. 1). At all times relevant to this action, plaintiff was confined at the Eastern Correctional Facility ("Eastern"), located in Napanoch, New York. *Id.* at 6.

Construed liberally, plaintiff's complaint alleges that he qualifies as a disabled person under the ADA and section 504 because he is deaf or hearing impaired. Compl. (Dkt. No. 1) at 7-10. According to plaintiff, several of the originally named defendants, all of whom are no longer parties to this action and are employed by the DOCCS, failed to provide him with access to participation in sign language classes. *Id.* at 11-12. It is alleged that plaintiff is in need of sign language classes in order to learn "another way of communication." *Id.* at 13.

II.   PROCEDURAL HISTORY

This action was commenced on August 3, 2011, by the filing of a complaint and an accompanying application to proceed *in forma pauperis* ("IFP"). Compl. (Dkt. No. 1). Although plaintiff Gonzalvo is the only remaining plaintiff, the complaint named five other plaintiffs that have now been dismissed from the case by virtue of a decision and order issued on May 4, 2012, by District Judge Norman A. Mordue. Decision and Order (Dkt. No. 11). Additionally, the complaint named six individual defendants, five of whom were dismissed following Judge Mordue's initial review of the complaint. Decision and Order (Dkt. No. 5). Service of process could not be effectuated with respect to the remaining defendant, identified in the

3

complaint as "Mr. Williams," because he is deceased. Decision and Order (Dkt. No. 22). Accordingly, Judge Mordue dismissed that defendant from the action, and *sua sponte* "deem[ed] the complaint amended to name the State of New York as the sole defendant." *Id.* Plaintiff's complaint asserts two causes of action, one under the ADA and another under section 504, but it fails to set forth a prayer for relief. *See generally* Compl. (Dkt. No. 1).

On December 19, 2012, in lieu of an answer, defendant filed a motion seeking dismissal of plaintiff's complaint, arguing that the court lacked jurisdiction to *sua sponte* amend the complaint on behalf of the plaintiff to name the State of New York as the sole defendant. Def.'s Memo of Law (Dkt. No. 29-1) at 4-6. Defendant's motion, to which plaintiff failed to respond,[1] is now ripe for determination, and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed. R. Civ. P. 72(b).

---

[1]     Plaintiff's failure to oppose defendant's motion does not preclude the court from recommending disposition of its motion. *See, e.g.*, *White v. Mitchell*, No. 99-CV-8519, 2001 WL 64756, at *1 (E.D.N.Y. Jan. 18, 2001). Because a motion to dismiss tests only the legal sufficiency of a plaintiff's complaint, the court can determine a complaint's sufficiency as a matter of law based on its own reading of the complaint and knowledge of the relevant case law. *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000). Before granting an unopposed motion, however, the court must make a threshold finding that the moving party has met its burden demonstrating entitlement to that relief. *McCall*, 232 F.3d at 323.

# III.    DISCUSSION

In a decision and order dated September 19, 2012, Judge Mordue held that, "[i]n light of plaintiff's pro se status, . . . the Court hereby dismisses Williams as a defendant and deems the complaint amended to name the State of New York as the sole defendant." Decision and Order (Dkt. No. 22) at 2. Judge Mordue explained that, because the proper party to sue under the ADA and section 504 is either the public entity responsible for the conduct in dispute, or a public official acting in his official capacity, the State of New York was the appropriate entity to substitute following the death of defendant Williams. *Id.*; *see also*, *e.g.*, *Parra v. Wright*, No. 11-CV-6270, 2011 WL 3608475, at *3 (W.D.N.Y. Aug. 10, 2011). Although defendant argues that the court did not have jurisdiction to make that substitution, it candidly acknowledges the absence of any legal authority to support its position. Def.'s Memo. of Law (Dkt. No. 29-1) at 5. Rather, defendant simply states that, "[f]or the same reason the Court lacked the jurisdiction to substitute Williams' with his successor, the Court lacks jurisdiction to substitute Williams with the State of New York." *Id.*

Having carefully considered defendant's argument, and conducting

my own research on the issue, I find there is no merit to its argument. Because a claim under the ADA and section 504 may be commenced against the public entity responsible for the alleged acts, plaintiff could have commenced this action against the State of New York from its inception. Instead, plaintiff opted to commence the action against a public official, Mr. Williams. Compl. (Dkt. No. 1). For the sake of judicial efficiency, and in its inherent authority to manage its docket, the court *sua sponte* substituted the State of New York, instead of, for example, issuing an order directing plaintiff to amend his complaint to name the State of New York as defendant. The court's authority to issue such a directive is well supported. *See*, *e.g.*, *Zuk v. Gonzalez*, No. 07-CV-0732, 2007 WL 2163186, at *2 (N.D.N.Y. July 26, 2007) (Scullin, J.) ("[T]o the extent that Plaintiff has named the individual Defendants in their official capacities, he has in essence named Onondaga County . . . as a Defendant. Construing Plaintiff's complaint liberally in light of his *pro se* status, and in the interest of judicial economy, the Court will *sua sponte* substitute Onondaga County as the sole Defendant in place of the individually named defendants." (internal citations omitted)); *Dockery v. Tucker*, No. 97-CV-3584, 2006 WL 5893295, at *7 (E.D.N.Y. Sept. 6, 2006) (adding the

United States as a defendant, *sua sponte*, in a Federal Tort Claims Act claim brought by a *pro se* plaintiff); *Ciancio v. Gorski*, No. 98-CV-0714, 1999 WL 222603, at *1 (W.D.N.Y. Apr. 14, 1999) (substituting, *sua sponte* and "in the interest of eliminating undue complication without affecting the substantial rights of the parties," the County of Erie as a defendant where it was unclear that the plaintiff could sue an individual in his official capacity under Title VII but well established that the county was a proper defendant).[2] Accordingly, I recommend that defendant's motion to dismiss plaintiff's complaint be denied.

## IV.   SUMMARY AND RECOMMENDATION

Plaintiff's complaint originally asserted claims under the ADA and section 504 against six individual defendants. Following the dismissal of five of those defendants, and learning that the sixth defendant is deceased, Judge Mordue substituted the State of New York as the sole defendant. His authority to *sua sponte* make that substitution in the interest of judicial efficiency, and in light of plaintiff's *pro se* status, is well supported. For these reasons, it is hereby respectfully

RECOMMENDED that defendant's motion to dismiss for failure to

---

[2]   All unreported decisions have been appended to this report for the convenience of the *pro se* plaintiff.

state a claim (Dkt. No. 29) be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d); Fed. R. Civ. P. 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of this court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:    July 10, 2013
         Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

Not Reported in F.Supp.2d, 2001 WL 64756 (E.D.N.Y.)
(Cite as: 2001 WL 64756 (E.D.N.Y.))



Only the Westlaw citation is currently available.

United States District Court, E.D. New York.
Antwon WHITE, Plaintiff,
v.
Dr. J. MITCHELL, Arthur Kill Correctional Facility
Health Services Director, Dennis Breslin, Arthur Kill
Correctional Facility Superintendent and Edward
Checkett, D.D.S., Arthur Kill Correctional Facility
Dentist, Defendants.
No. 99-CV-8519 (FB).

Jan. 18, 2001.

Antwon White, Arthur Kill Correctional Facility, Staten
Island, New York, for the Plaintiff, pro se.

Eliot Spitzer, Attorney General of the State of New York,
By: Maria Filipakis, New York, New York, for the
Defendants.

*MEMORANDUM AND ORDER*

BLOCK, J.

**\*1** Plaintiff Antwon White ("White"), a prison inmate,
brings this action *pro se* pursuant to 42 U.S.C. § 1983 and
New York law alleging that defendants were both
negligent and deliberately indifferent to his medical needs
in connection with treatment for hearing loss he suffered
following the extraction of a wisdom tooth. White pleads
that this conduct violated his rights under the Eighth
Amendment, and seeks injunctive relief as well as
compensatory and punitive damages. While White does
not make the distinction clearly, the Court construes the
complaint as naming defendants in both their individual
and official capacities.[FN1] Defendants have moved to
dismiss White's complaint pursuant to Fed.R.Civ.P.

12(b)(6) asserting that (1) the complaint fails to state a
claim under the Eighth Amendment for deliberate
indifference to his medical needs; (2) the complaint fails
to allege personal involvement by defendant Dennis
Breslin ("Breslin"), Superintendent of Arthur Kill
Correctional Facility ("Arthur Kill"); and (3) defendants
are entitled to qualified immunity. Although White has
filed no opposition to defendants' motion, the Court can
decide the motion without the benefit of a submission
from him.[FN2] For the reasons set forth below, defendants'
motion is denied.

FN1. "[T]he plaintiff ... should not have the
complaint automatically construed as focusing on
one capacity to the exclusion of the other."
*Frank v. Relin,* 1 F.3d 1317, 1326 (2d Cir.1993).

FN2. *See McCall v. Pataki,* 232 F.3d 321, 323
(2d Cir.2000) ("If a complaint is sufficient to
state a claim on which relief can be granted, the
plaintiff's failure to respond to a Rule 12(b)(6)
motion does not warrant dismissal").

BACKGROUND

The following facts are drawn from White's complaint and
the records attached thereto, and are accepted as true for
the purposes of this motion: On August 5, 1999, while
incarcerated at Arthur Kill, White had a wisdom tooth
extracted by defendant Edward Checkett ("Checkett"), a
dentist employed at Arthur Kill. Read broadly, the
complaint seems to allege that Checkett was aware that he
negligently injured White during the extraction procedure,
but failed to provide immediate medical attention.

Soon after the extraction, White began experiencing
ringing and hearing loss in his left ear. On several
occasions, White brought these complaints to the attention
of defendant Jennifer Mitchell ("Mitchell"), Arthur Kill's
Health Services Director. However, Mitchell did not
provide White with prompt medical attention, and, in
particular, failed to refer him to an ear specialist.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 64756 (E.D.N.Y.)
(Cite as: 2001 WL 64756 (E.D.N.Y.))

On November 15, 1999, White filed an administrative complaint, pursuant to the Department of Correctional Services' grievance procedures, requesting medical attention for his hearing problem and, "if necessary," a referral to an ear specialist. Inmate Grievance Complaint attached to Compl. White alleges that Breslin denied his grievance, and "failed to direct his subordinates" to provide White with prompt medical attention.[FN3]

> FN3. Despite White's allegation to the contrary, the Inmate Grievance Resolution Committee ("IGRC") appears to have accepted White's grievance on November 30, 1999, and directed him to "report back to sick-call." Inmate Grievance Complaint attached to Compl.

On December 9, 1999, White was seen by an audiologist who described the degree of hearing loss in his left ear as "severe-profound." NYSDOCS Request & Report of Consultation attached to Compl. The audiologist recommended further medical consultation to determine the etiology of White's hearing loss and approval for a hearing aid evaluation. *See Id.* White filed the complaint in this action on December 23, 1999.

### DISCUSSION

I. Standard on a Motion to Dismiss

*2 In considering a motion to dismiss, the court's task is " 'necessarily a limited one." ' *George Haug Co. v. Rolls Royce Motor Cars Inc.,* 148 F.3d 136, 139 (2d Cir.1998) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). "[I]n ruling on [the] defendant[s'] motion, the court must accept as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College,* 128 F.3d 59, 63 (2d. Cir1997). The Court may consider the allegations in the complaint and "all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken." *Hirsch v. Arthur Anderson & Co.,* 72 F.3d 1085, 1092 (2d

Cir.1995). In addition, because White is a *pro se* plaintiff, his pleadings must be read liberally. *See Corcoran v. New York Power Auth.,* 202 F.3d 530, 536 (2d Cir.1999); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). The Court should grant such a motion only if, after viewing the plaintiff's allegations in the most favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Feder v. Frost,* 220 F.3d 29, 32 (2d Cir.2000).

II. Section 1983 Individual Capacity Claims

Defendants contend that White's complaint must be dismissed because it fails to state an Eighth Amendment violation. To state a claim under § 1983 for deprivation of medical treatment, a plaintiff must show that the defendant acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). A serious medical need exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir.1997)) (internal quotation marks omitted). The Second Circuit has recently held that refusal to treat a degenerative condition that tends to have serious medical implications if left untreated is a sufficient basis to support the existence of a serious medical need. *See Harrison v. Barkley,* 219 F.3d 132, 137 (2d Cir.2000) (holding that a tooth cavity may be a serious medical condition).

To establish deliberate indifference, the plaintiff must prove that "the prison official knew of and disregarded the plaintiff's serious medical needs." *Chance,* 143 F.3d at 703 (citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). Deliberate indifference will exist when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer,* 511 U.S. at 847. "Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). "[M]ere medical malpractice' is not tantamount to deliberate indifference," but may rise to the level of deliberate indifference when it "involves culpable

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 64756 (E.D.N.Y.)
(Cite as: 2001 WL 64756 (E.D.N.Y.))

recklessness, *i.e.,* an act or failure to act ... that evinces 'a conscious disregard of a substantial risk of harm." ' *Chance,* 143 F.3d at 703 (quoting *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) (internal quotation marks omitted)).

**\*3** White has alleged a "serious medical condition" under *Gamble.* He states that the ringing in his ear developed into a progressive loss of hearing. Indeed, the audiologist's report referred to above characterizes the degree of hearing loss in White's left ear as being "severe-profound."

*Gamble'* s "deliberate indifference" prong is satisfied in respect to each of the defendants in their individual capacities by a reasonably liberal reading of White's *pro se* complaint. With respect to Checkett, White appears to allege that the injury leading to his hearing loss occurred when Checkett negligently extracted his wisdom tooth. Dental malpractice, without more, does not state a claim cognizable under § 1983. White further alleges, however, that Checkett was deliberately indifferent to his medical condition because, once he knew that he had injured White during the extraction procedure, he failed to render timely medical treatment to abate the harm.

As for Mitchell, White alleges that she ignored his subsequent repeated requests for appropriate treatment while his condition worsened, and failed to supervise Arthur Kills's medical personnel in connection with his treatment. Mitchell, therefore, allegedly knew of White's serious medical need, and consciously failed to act to prevent further harm to White.

Finally, Breslin allegedly failed to adequately supervise White's treatment, and denied his grievance. Defendants assert that the complaint must be dismissed as to Breslin because it fails to allege his personal involvement in the Eighth Amendment violation. Because "[s]ection 1983 imposes liability only upon those who actually cause a deprivation of rights, 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " ' *Blyden v. Mancusi,* 186 F.3d 252, 264 (2d Cir.1999) (quoting *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994)). However, "personal

involvement of a supervisory defendant may be shown by evidence that ... the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong...." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). White alleges that his grievance made Breslin aware that his medical needs were being ignored. White's further allegations that Breslin denied the grievance, and failed to take steps to provide for White's treatment are sufficient to plead Breslin's personal involvement in the violation.

III. Section 1983 Official Capacity Claims

To the extent White has asserted claims seeking damages against defendants in their official capacities, they are barred by sovereign immunity. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1989). However, the complaint also seeks injunctive relief against the defendants. Injunctive relief may be obtained in a § 1983 action for deliberate indifference to a serious medical need, even absent an official's personal involvement, if the complaint alleges that the official had "responsibility to ensure that prisoners' basic needs were met, and the complaint adequately alleged deliberate indifference to a serious medical need." *Koehl v. Dalsheim,* 85 F.3d 86, 89 (2d Cir.1996); *see also New York City Health & Hosp. Corp. v. Perales,* 50 F.3d 129, 135 (2d Cir.1995) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 102, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)) ("the Eleventh Amendment does not bar federal courts from issuing an injunction against a state official who is acting contrary to federal law"). White alleges that defendants have denied him treatment for his progressive hearing loss. If he can prove his contentions, he may be entitled to injunctive relief.

IV. Qualified Immunity

**\*4** The defendants enjoy qualified immunity from White's suit if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Even where a prisoner's rights are clearly established, "qualified immunity is still available to an official if it was 'objectively reasonable for the

Not Reported in F.Supp.2d, 2001 WL 64756 (E.D.N.Y.)
(Cite as: 2001 WL 64756 (E.D.N.Y.))

public official to believe that his acts did not violate those rights." ' *Hathaway,* 37 F.3d at 67 (quoting *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991)).

Defendants contend that their actions were objectively reasonable. (*See* Def. Mem. at 9). However, because the complaint adequately alleges a claim for deliberate indifference, defendants are not entitled to qualified immunity on their Fed.R.Civ.P. 12(b)(6) motion. *See Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996) (the issue when considering qualified immunity in the context of Fed.R.Civ.P. 12(b)(6) "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims"). This allegation, if proved, could constitute a violation of White's Eighth Amendment rights, and more facts are necessary to resolve the qualified immunity question.

V. State Law Claims

As referred to above, the complaint, liberally construed, also alleges dental malpractice against Checkett and negligent supervision against Breslin and Mitchell in their individual capacities. Although theses claims are not cognizable in an action under § 1983, they do allege state law claims. Defendants do not address these claims in their motion to dismiss. Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over these pendent claims. *See Shimon v. Department of Corr. Serv. for the State of N.Y.,* No. 93 Civ. 3144(DC), 1996 WL 15688, at *3 (S.D.N.Y. Jan. 17, 1996) (Section 24 of New York Correction Law does not bar federal court from hearing pendent state law medical malpractice claim asserted against New York State Department of Correctional Services employee in employee's individual capacity). However, the Eleventh Amendment bars White's claims for damages or injunctive relief against the defendants in their official capacities. *See Edelman v. Jordan,* 415 U.S. 651, 663 (1974); *Fleet Bank, Nat'l Ass'n v. Burke,* 160 F.3d 883, 891 (2d Cir.1998).

CONCLUSION

Defendants' motion to dismiss is denied.

SO ORDERED.

E.D.N.Y.,2001.
White v. Mitchell
Not Reported in F.Supp.2d, 2001 WL 64756 (E.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3608475 (W.D.N.Y.)

(Cite as: 2011 WL 3608475 (W.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

W.D. New York.
Edwin PARRA, Plaintiff,
v.
Dr. Lester WRIGHT, Chief M.D.; DR/NP Ben Oakes,
Southport C.F.; Dr. Canefield, Southport C.F.; Jon
Vonhagn, Nurse Administrator; Director of Health
Services, Southport; K. Weaver, RN, Southport C.F.; D.
Weed, RN, Southport C.F.; Mr. Clement, Nurse,
Southport C.F.; Dir. of Health Services, Lakeview C.F.;
N.P. Obertean, Wende C.F.; Dir. of Health Services
Levitt, Wende C.F.; Susan Post, Wende C.F.; and L.
Wilcox, NP, Lakeview C.F., Defendants.
No. 11–CV–6270Fe.

Aug. 10, 2011.
Edwin Parra, Pine City, NY, pro se.

**DECISION and ORDER**

WILLIAM M. SKRETNY, Chief Judge.

*INTRODUCTION*

**\*1** Plaintiff has requested permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and by Order dated June 17, 2011, was directed to either file additional information in support of the request or pay the filing fee (Docket No. 4). Plaintiff timely filed the requested additional information (Docket No. 5). Based on the additional information, the Court finds that plaintiff has met the statutory requirements. Accordingly, plaintiffs request to proceed as a poor person is hereby granted.

Plaintiffs complaint has been reviewed by the Court with respect to the 28 U.S.C. §§ 1915(e)(2) and 1915A criteria. Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that the defendants were deliberately indifferent to his serious medical needs by failing to provide adequate treatment when he was incarcerated at several prisons including Southport, Wende, and Lakeview Correctional Facilities. Plaintiff states that he suffers from chronic back pain, and at times has had his pain medications and physical therapy discontinued, his back brace confiscated, and has been denied a bottom bunk. Plaintiff also alleges that the defendants violated the Americans with Disability Act and § 504 of the Rehabilitation Act.

For the reasons discussed below, plaintiff will be given an opportunity to file an amended complaint. If plaintiff does not file an amended complaint as directed below, plaintiff's § 1983 claims against Wright; Vonhagn; Director of Health Services Southport; Oakes; Canefield; Weaver; Clement; Director of Health Services Lakeview; Director of Health Services Levitt; Post; and Wilcox will be dismissed, and § 1983 claims against only Weed and Obertean will proceed forward.

Further, in regard to plaintiff's ADA and Rehabilitation Act claims, if plaintiff does not file an amended complaint as directed below, the Court will allow the ADA and Rehabilitation Act claims to proceed solely against defendant Wright in his official capacity and will dismiss ADA and Rehabilitation Act claims against all remaining defendants entirely.

Plaintiff has filed a motion to amend the complaint (Docket No. 6) which based on this Order is denied as moot. Further, the reasons discussed below, plaintiff's motion for appointment of counsel (Docket No. 3) is denied.

*DISCUSSION*

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to this action. Therefore, plaintiff is granted permission to proceed *in forma pauperis.* Sections 1915(e)(2)(B) and 1915A(a) of 28 U.S.C. require the Court to conduct an initial screening of this complaint. The Court shall dismiss a complaint if the action (I) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *see also Abbas v. Dixon,* 480 F.3d 636 (2d

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3608475 (W.D.N.Y.)

(Cite as: 2011 WL 3608475 (W.D.N.Y.))

Cir.2007).

In evaluating the complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiffs favor. *See Larkin v. Savage,* 318 F.3d 138, 139 (2d Cir.2003) (per curiam); *King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson, v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (internal quotation marks and citation omitted); *see also Boykin v. Keycorp,* 521 F.3d 202, 213 (2d Cir.2008) (discussing pleading standard in *pro se* cases after *Twombly* ). "A document filed *pro se* is to be liberally construed, ..., and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erikson,* 551 U.S. at 94, 127 S.Ct. at 2200 (internal quotation marks and citations omitted).

**\*2** Plaintiff brings this action pursuant to 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton,* 126 F.3d 400, 405 (2d Cir.1997) (citing *Eagleston v. Guido,* 41 F.3d 865, 875–76 (2d Cir.1994)).

Plaintiff also alleges that he is bringing claims under the Americans with Disabilities Act and the Rehabilitation Act.

**INDIVIDUAL DEFENDANTS**

**§ 1983 ACTION—PERSONAL INVOLVEMENT**

Plaintiff names thirteen defendants, but except for defendants Weed and Obertean, provides minimal or no allegations of personal involvement of the defendants. Plaintiff's § 1983 claims against all defendants, except Weed and Obertean, are therefore subject to dismissal. Plaintiff will, however, be given an opportunity to amend his complaint to include allegations of personal involvement regarding the remaining defendants,

A prerequisite for liability under a § 1983 claim is "personal involvement" by the defendants in the alleged constitutional deprivation. *Spencer v. Doe,* 139 F.3d 107, 112 (2d Cir.1998).

A defendant may be "personally involved" in causing a constitutional deprivation if: (1) defendant participated directly in the alleged infraction; or (2) acting in a supervisory capacity, defendant (a) failed to remedy a continuing or egregious wrong after learning of a violation, (b) created a policy or custom under which the unconstitutional practices occurred or allowed such policy or custom to continue, or (c)was "grossly negligent" in managing subordinates who actually caused the constitutional deprivation.

*Candelaria v. Coughlin,* 787 F.Supp. 368, 372 (S.D.N.Y.1992) (citing *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). *See also Colon v. Coughlin,* 58 F.3d 865, 874 (2d Cir.1995) ("The bare fact that [the defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [plaintiff's] claim").

Plaintiff is further advised that supervisory defendants are not personally involved for purposes of § 1983 liability based solely on a failure to respond to letters sent by plaintiff. "Generally, the allegation that a supervisory official ignored a prisoner's letter protesting unconstitutional conduct is not itself sufficient to allege the personal involvement of the official so as to create liability under § 1983." *Gayle v. Lucas,* No. 97 Civ. 0883(MGC), 1998 WL 148416, at \*4 (S.D.N.Y. March 30, 1998). *Cf. Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (plaintiffs allegation that the superintendent of a correctional facility did not respond to his letter of his complaint did not raise a triable issue of fact where the contents of the letter were not specified); *Davis v. City of New York,* No. 00CIV4309 SAS, 2000 WL 1877045, at \*9 (S.D.N.Y. Dec.27, 2000) (finding no personal involvement where supervisory official ignored letter of protest and had no other involvement in the alleged constitutional deprivation); *Richardson v. Coughlin,* 101 F.Supp.2d 127, 132–133 (W.D.N.Y.2000) (granting summary judgment to supervisory official on ground that no personal involvement in constitutional violation shown

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

where defendant merely ignored prisoner's letter of complaint); and *Pritchett v. Artuz,* No. 99 Civ. 3957(SAS), 2000 WL4157, at *6 (S.D.N.Y. Jan. 3, 2000) (finding no personal involvement and thus no § 1983 liability where supervisory official ignored prisoner's letter of complaint).

***3** Plaintiff will be given an opportunity to file an amended complaint. In his amended complaint, plaintiff is directed to provide allegations regarding the personal involvement of each named defendant for his § 1983 claim. In the facts section of his amended complaint, plaintiff should allege what each defendant did or did not do and when the events occurred. Plaintiff may also add to his amended complaint the allegations he attempted to present in his motion to amend the complaint. If plaintiff does not file an amended complaint, § 1983 claims against defendants Wright; Vonhagn; Director of Health Services Southport; Oakes; Canefield; Weaver; Clement; Director of Health Services Lakeview; Director of Health Services Levitt; Post; and Wilcox will be dismissed, and § 1983 claims against only Weed and Obertean will proceed.

**ADA AND REHABILITATION ACT CLAIMS**

Plaintiff states that he is bringing claims based on the ADA and the Rehabilitation Act against the defendants. Contrary to claims brought under 42 U.S.C. § 1983, claims under the ADA and the Rehabilitation Act cannot be brought against state employees in their individual capacities. *See* *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn,* 280 F.3d 98, 107 (2d Cir.2001). The proper party to sue under the ADA or the Rehabilitation Act is the public entity responsible for the acts, or a public official acting in his official capacity. *Butterfield v. New York State,* No. 96Civ.5144(BDP)LMS, 1998 WL 401533 (S.D.N.Y. July 15, 1998).

Plaintiff will be given an opportunity to amend his complaint to name proper parties, namely the public entity responsible for the acts, or a public official acting in his official capacity, to support claims under the ADA and Rehabilitation Act. If plaintiff does not file an amended complaint that addresses this issue, the Court will allow the ADA and Rehabilitation Act claims to proceed solely against defendant Wright in his official capacity and will dismiss ADA and Rehabilitation Act claims against all remaining defendants.

**APPOINTMENT OF COUNSEL**

Plaintiff has filed a motion for appointment of counsel (Docket No. 3). There is insufficient information before the Court at this time to make the necessary assessment of plaintiffs claims under the standards promulgated by *Hendricks v. Coughlin,* 114 F.3d 390, 392 (2d Cir.1997), and *Hodge v. Police Officers,* 802 F.2d 58 (2d Cir.1986), as issue has yet to be joined. Therefore, plaintiffs motion for appointment of counsel is denied without prejudice at this time. It is the plaintiff's responsibility to retain an attorney or press forward with this lawsuit *pro se.* 28 U.S.C. § 1654.

***CONCLUSION***

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization, his request to proceed *in forma pauperis* is granted.

For the reasons set forth above, plaintiff's § 1983 claims against Wright; Vonhagn; Director of Health Services Southport; Oakes; Canefield; Weaver; Clement; Director of Health Services Lakeview; Director of Health Services Levitt; Post; and Wilcox are subject to dismissal. Further, for the reasons stated above, ADA and Rehabilitation Act claims against all defendants except defendant Wright in his official capacity are subject to dismissal.

***4** Plaintiff will be given an opportunity to file an amended complaint, as directed above by **September 16, 2011,** in which he includes the necessary allegations regarding his claims and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff is advised that an amended complaint is intended to **completely replace** the prior complaint in the action. “It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.” *Arce v. Walker,* 139 F.3d 329, 332 n. 4 (2d Cir.1998) (quoting *International Controls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir.1977)); *see also* *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994). Therefore, plaintiffs amended complaint must include all of the allegations against each of the defendants regarding the claims he seeks to raise in this

Not Reported in F.Supp.2d, 2011 WL 3608475 (W.D.N.Y.)

(Cite as: 2011 WL 3608475 (W.D.N.Y.))

amended complaint, so that the amended complaint may stand alone as the sole complaint in this action which the defendants must answer.

Plaintiff is forewarned that if he fails to file an amended complaint as directed above by **September 16, 2011,** § 1983 claims against defendants Wright; Vonhagn; Director of Health Services Southport; Oakes; Canefield; Weaver; Clement; Director of Health Services Lakeview; Director of Health Services Levitt; Post; and Wilcox will be dismissed, and § 1983 claims against only Weed and Obertean will proceed forward. Further, if plaintiff does not file an amended complaint as directed, the ADA and Rehabilitation Act claims will proceed solely against defendant Wright in his official capacity and will be dismissed against all other defendants.

Further, for the reasons discussed above, plaintiff's motion to amend his complaint is denied as moot and his motion for appointment of counsel is denied.

### ORDERS

IT HEREBY IS ORDERED, that plaintiffs motion to proceed *in forma pauperis* (Docket No. 2) is granted;

FURTHER, that plaintiff is granted leave to file an amended complaint as directed above by **September 9, 2011;**

FURTHER, that the Clerk of the Court is directed to send to plaintiff with this order a copy of the original complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint;

FURTHER, that in the event plaintiff fails to file an amended complaint as directed above by **September 9, 2011,** plaintiff's § 1983 claims against Wright; Vonhagn; Director of Health Services Southport; Oakes; Canefield; Weaver; Clement; Director of Health Services Lakeview; Director of Health Services Levitt; Post; and Wilcox will be dismissed, and § 1983 claims against only Weed and Obertean will proceed forward.

FURTHER, that in the event plaintiff fails to file an amended complaint as directed above by **September 9, 2011,** plaintiff's ADA and Rehabilitation Act claims will proceed solely against defendant Wright in his official capacity and will be dismissed against all other defendants;

**\*5** FURTHER, that plaintiff's motion to amend the complaint (Docket No. 6) is denied as moot;

FURTHER, plaintiff's motion for appointment of counsel (Docket No. 3) is denied.

SO ORDERED.

W.D.N.Y.,2011.

Parra v. Wright
Not Reported in F.Supp.2d, 2011 WL 3608475 (W.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2163186 (N.D.N.Y.)

(Cite as: 2007 WL 2163186 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Vladimir ZUK, Plaintiff,
v.
Esteban GONZALEZ, Captain, Onondaga County
Justice Center; Vincent Wasilewski, Assistant Chief,
Onondaga County Justice Center; Kevin Brisson,
Captain, Onondaga County Justice Center; Thomas
Metz, Lieutenant-Personnel Section; Anthony Callisto,
former Chief-Custody Division (Retried June, 2006);
Richard Carbery, Chief-Custody Division, Onondaga
County Justice Center; Kevin Walsh, Sheriff of
Onondaga County; and Warren Darby, Undersheriff of
Onondaga County, Defendants.
No. 5:07-CV-732 (FJS/DEP).

July 26, 2007.
Vladimir Zuk, Syracuse, NY, pro se.

**MEMORANDUM-DECISION AND ORDER**

SCULLIN, Senior Judge.

**I. INTRODUCTION**

*1 There Clerk of the Court has sent Plaintiff's complaint to the Court for its review. *See* Dkt. No. 1. Plaintiff filed his complaint pursuant to Title VII of the Civil Rights Act of 1964, as amended and codified at 42 U.S.C. § 2000e *et seq.,* and he has paid the filing fee for this action.

In his complaint, Plaintiff alleges, among other things, that, while he was an employee of Onondaga County at the Onondaga County Justice Center, Defendants discriminated against him in the course of his employment, denied him promotion, and retaliated against him on the basis of his national origin. FN1

FN1. Plaintiff attached to his complaint a copy of the right-to-sue letter that the Equal Employment Opportunity Commission ("EEOC") issued

regarding the above allegations of discrimination. *See* Dkt. No. 1 at 19. Plaintiff alleges that he received the letter on April 13, 2007. *See id.* at 17.

**II. DISCUSSION**

Plaintiff names Esteban Gonzalez, Vincent Wasilewski, Kevin Brisson, Thomas Metz, Anthony Callisto, Richard Carbery, Kevin Walsh, and Warren Darby as Defendants. However, it is well-established that Title VII does not create individual liability for violations of its terms. *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313-17 (2d Cir.1995). Only the employer may be held liable, and is in fact held vicariously liable for a hostile work environment created by a supervisor with immediate or successively higher authority over the victimized employee. *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

*Linder v. City of N.Y.,* 263 F.Supp.2d 585, 594-95 (E.D.N.Y.2003).

Therefore, the Court dismisses the above-named Defendants from this action in their personal capacity.

The question remains, however, whether Plaintiff may sue the aforesaid Defendants in their "official" capacity as representatives of the County of Onondaga.

"[T]he Second Circuit has left open the question whether [Title VII] suits may be maintained against employees in their 'official capacity[.]' " *Guzman v. Round Hill Country Club, Inc.,* No. 3:03CV0851, 2003 WL 23212750, at *1 (D.Conn. Jan. 30, 2003) (citing *Hafez v. Avis Rent A Car System, Inc.,* No. 99-9459, 2000 WL 1775508, *2 (2d Cir. Nov. 29, 2000)). However, "most circuits either have rejected such suits outright, on the ground that employees cannot incur personal liability under Title VII, or have treated such suits as an action against the employer." *Id.* (footnote

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2163186 (N.D.N.Y.)

(Cite as: 2007 WL 2163186 (N.D.N.Y.))

and citations omitted). This has been the "trend" in the district courts within the Second Circuit as well. *See id.* at *1, n. 4 (citing *McBride v. Routh,* 51 F.Supp.2d 153, 156-57 (D.Conn.1999) (citing cases)).

   *Simpson v. N.Y. State Dep't of Civil Serv.,* No. 02-CV-1216, 2005 WL 545349, *9 (N.D.N.Y. Mar. 1, 2005).

   For example, in *Bottge v. Suburban Propane,* 77 F.Supp.2d 310 (N.D.N.Y.1999), the court held "that [the Second Circuit's] individual liability bar applies to individual defendants in their official capacities, as well as to situations where the plaintiff seeks prospective injunctive relief against such individuals, under ... Title VII[.]" *Id.* at 313. The court explained further that "[t]he official/personal capacity distinction seems misplaced since it would place this Court in the position of holding someone liable without providing Plaintiff with a remedy at law." *Id.; see also Gray v. Shearson Lehman Bros., Inc.,* 947 F.Supp. 132, 136 (S.D.N.Y.1996) (dismissing Title VII claims against individuals sued in their official capacities). The Court finds the courts' reasoning in *Simpson* and *Bottge* persuasive and, therefore, dismisses Plaintiff's Title VII claims against the individual Defendants in their official capacities as well.

   **\*2** Since the Court has dismissed all of the claims against all of the individual Defendants, no Defendant remains. Nonetheless, to the extent that Plaintiff has named the individual Defendants in their official capacities, he has in essence named Onondaga County-his actual employer-as a Defendant. [FN2] *See Ciancio v. Gorski,* No. 98-CV-0714E, 1999 WL 222603, *1 (W.D.N.Y. Apr. 14, 1999) (holding that because the county employer would pay any judgment in an official capacity suit, the county employer was the proper defendant). Construing Plaintiff's complaint liberally in light of his *pro se* status, *see Haines v. Kerner,* 404 U.S. 519, 520 (1972), and in the interest of judicial economy, the Court will *sua sponte* substitute Onondaga County as the sole Defendant in place of the individually named Defendants. *See Ciancio,* 1999 WL 222603, at *1 (citing [Fed.R.Civ.P.] 21 ("[p]arties may be dropped or added by order of the court on motion of any party or on its own initiative at any stage of the action and on such terms as are just"); *Cimemotion NV v.*

*Lorimar-Telepictures Corp.,* 1989 WL 120083, *6 (S.D.N.Y. Oct. 5, 1989) (non-party over whom court could exercise personal jurisdiction would be added as defendant *sua sponte* under [Federal Rule of Civil Procedure] 21 "in the interest of the efficient administration of justice")).

   FN2. Onondaga County, as the employer, is the proper defendant in a Title VII action. *See* 42 U.S.C. §§ 2000e and 2000e-2.

### III. CONCLUSION

   After carefully reviewing the entire file in this case and the applicable law, and for the reasons stated herein, the Court hereby

   **ORDERS** that Esteban Gonzalez, Vincent Wasilewski, Kevin Brisson, Thomas Metz, Anthony Callisto, Richard Carbery, Kevin Wash, and Warren Darby are dismissed as Defendants in this action; and the Court further

   **ORDERS** that Onondaga County is *sua sponte* substituted as a Defendant in this action in place of the individual Defendants pursuant to Rule 21 of the Federal Rules of Civil Procedure; and the Court further

   **ORDERS** that the Clerk of the Court shall add "Onondaga County" as a Defendant to the docket of this action; and the Court further

   **ORDERS** that the Clerk of the Court shall issue a summons and forward it to Plaintiff, along with a packet containing General Order 25, which sets forth this District's Civil Case Management Plan. The Court advises Plaintiff that it is his responsibility to serve Defendant immediately with the summons, a copy of his complaint, and a packet containing General Order 25 in accordance with the Federal Rules of Civil Procedure; and the Court further

   **ORDERS** that Defendant or its counsel shall file a formal response to Plaintiff's complaint as provided for in the Federal Rules of Civil Procedure subsequent to service of process on Defendant; and the Court further

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2163186 (N.D.N.Y.)

(Cite as: 2007 WL 2163186 (N.D.N.Y.))

**ORDERS** that Plaintiff shall immediately serve a copy of this Order upon any Defendant whom he has already served with process in this action; and the Court further

**ORDERS** that the parties must accompany any paper that they send to the Court or to the Clerk of the Court with a certificate setting forth the date on which they mailed a true and correct copy of the same to all opposing parties or their counsel. The Clerk of the Court shall return to the party who sent it any letter or other document that the Court or the Clerk of the Court receives that does not include a certificate of service that clearly states that the party served an identical copy on all opposing counsel. Plaintiff shall also comply with any requests of the Clerk's Office for any documents that are necessary to maintain this action. All motions shall comply with this District's Local Rules; and the Court further

**\*3 ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

N.D.N.Y.,2007.

Zuk v. Gonzalez
Not Reported in F.Supp.2d, 2007 WL 2163186 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

E.D. New York.
Jasper L. DOCKERY, Plaintiff,
v.
Nathan TUCKER, et al., Defendants.
No. 97-CV-3584 (ARR).

Sept. 6, 2006.
Jasper Lloyd Dockery, Atlanta, GA, pro se.

Gail A. Matthews, United States Attorneys Office, Brooklyn, NY, for Nathan Tucker.

E. David Woycik, Sanders Sanders & Block, P.C., Mineola, NY, for Defendants.

**REPORT AND RECOMMENDATION**

ROANNE L. MANN, United States Magistrate Judge.

*1 Currently pending before this Court, on a referral from the Honorable Allyne R. Ross, are two sets of defense motions to dismiss or for summary judgment with respect to the Third Amended Complaint ("3d Am. Compl.") of *pro se* plaintiff Jasper Dockery ("Dockery" or "plaintiff"). One set of motions was filed by Special Agent Nathan Tucker ("Tucker"), and the other by defendants the District of Columbia ("the District"), Pamela Reed ("Reed"), Phineas Young ("Young"), Alan Dreher ("Dreher"), and Larry Soulsby ("Soulsby") (collectively, "the D.C. defendants"). Plaintiff has cross-moved for summary judgment on all claims against both sets of defendants. For the reasons detailed below, this Court recommends that defendants' motions be granted in part and denied in part, and that plaintiff's cross-motions for summary judgment be denied in their entirety.

**PROCEDURAL HISTORY**

The present action arises out of two attempts by various law enforcement officers to arrest plaintiff and return him to the District of Columbia to face criminal charges. According to allegations in plaintiff's original complaint ("Orig.Compl."), on February 6, 1996, Special Agent Tucker of the Federal Bureau of Investigation ("FBI"), and Detectives Reed and Young of the Washington, D.C. Metropolitan Police Department ("D.C.Police"), wielding high powered guns and accompanied by dogs, "invaded plaintiff's family's [apartment] building" at 2127 Pitkin Avenue, Brooklyn, New York ("the Premises"), without announcing their presence, demanding admission, or presenting a warrant. Orig. Compl. ¶¶ IV(1-3). In the process of arresting plaintiff, the agent and officers allegedly cut padlocks off the door to the downstairs grocery store, broke down the building's main door with a sledgehammer, shot a dog with a tranquilizer gun, and broke into plaintiff's grocery store and apartment, as well as the apartments of three neighboring tenants. *Id.* ¶¶ IV(1-2). Plaintiff also claimed, among other things, that his arrest was false and "pretextual," *id.* ¶ IV(2, 4), and that, as a result of defendants' actions, he sustained property damage and loss of income and liberty, and his family suffered psychological damage. *Id.* ¶¶ IV(1-2, 4, 9). Plaintiff demanded damages in the amount of $5,000,000, plus $800 per day of his confinement. *Id.* ¶ IV(12).

After defendants Reed and Young filed answers and Tucker and several other defendants (since dismissed from the case) filed dispositive motions, plaintiff moved for leave to amend his original complaint. The first amended complaint ("1st Am. Compl." [# 21] ) FN1 concerned an earlier incident that took place on October 23, 1995, also at the Premises.FN2 That pleading alleged that during the earlier search, defendants Tucker, Reed, Young, and John Doe defendants-unnamed FBI agents, D.C. detectives, and police officers with the New York City Police Department ("NYPD")-engaged in an illegal search of the Premises. *See id.* ¶¶ 4-17. In particular, plaintiff asserted that the defendants: (1) searched the grocery store, plaintiff's apartment, and the other apartments in the Premises, from which assorted items were later found to be missing, *see id.* ¶¶ 9-16; (2) broke down doors, cut padlocks, and severely damaged walls, ceilings, electrical wiring, and plumbing throughout the Premises, *see id.;* (3) "set a

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

police attac[k] dog loose" in plaintiff's apartment, terrorizing plaintiff's family, *see id.* ¶ 11; (4) forced plaintiff's family out of their apartment during a four-hour search, *see id.* ¶ 13; (5) tear-gassed the property, *see id.* ¶ 17; and (6) intentionally left the Premises unsecured upon their departure, *see id. ad damnum* clause. Charging defendants with having perpetrated an illegal search (in violation of the Fourth Amendment), and having deprived plaintiff of his personal property without due process of law (in violation of the Fifth and Fourteenth Amendments), *see id.* ¶¶ 18-19, plaintiff sought, in his first amended complaint, a declaratory judgment, as well as $73,490 in property damage, $80,000 in damages from each defendant for his daughter's emotional distress, and $280,000 in punitive damages from each defendant. *See id. ad damnum* clause.

> FN1. For clarity, court filings will be identified in this opinion by their corresponding numbers on the docket sheet. Where the parties have not paginated their submissions, citations will be to the page numbers assigned through Electronic Case Filing.

> FN2. The first amended complaint vaguely asserted that the search occurred from "October through November of 1995." 1st Am. Compl. ¶¶ 3-10. The specific date-October 23, 1995-emerged in discovery and plaintiff has included that date in his third amended complaint ("3d Am. Compl." [# 154] ). *See* 3d Am. Compl. at 4-7; Transcript of 8/18/99 Deposition Testimony of Jasper Dockery ("Dockery Dep.") at 64-65 (submitted as Exhibit E to Declaration of Assistant U.S. Attorney Gail A. Matthews in Support of Agent Tucker's Motion to Dismiss or for Summary Judgment on All Claims in the Third Amended Complaint ("Matthews Decl." [# 219] ).

**\*2** On September 24, 1998, Judge Ross dismissed most of plaintiff's claims from the original complaint, including the false imprisonment and false arrest claims against Tucker, Reed, and Young. *See* 9/24/98 Opinion & Order [of Judge Allyne R. Ross] ("9/24/98 Op." [# 44] ) at 31-32. She also granted Tucker's motion for summary

judgment on all claims against him. *See id.* at 32. Accordingly, "[t]he only remaining claims [from] plaintiff's original complaint are his Fourth Amendment claims against Detectives Reed and Young." *See id.* FN3

> FN3. Plaintiff's three amended complaints added claims relating to the October 1995 search but did not replead the Fourth Amendment claims asserted in his original complaint and arising out of the February 1996 search. In allowing plaintiff to file his third amended complaint, the Court directed plaintiff to specify whether he still wished to pursue the only outstanding claim from his original complaint-his Fourth Amendment claim against Reed and Young for the 1996 search. 4/28/05 Memorandum and Order ("4/28/05 M & O" [# 207] ) at 15-16. On May 14, 2005, plaintiff wrote the Court requesting that this claim be considered in conjunction with his third amended complaint. *See* Notice to Court to Keep Claims against Reed and Young Active [# 221]. Accordingly, contrary to the D.C. defendants' assumption (*see* Memorandum of Law of Defendants District of Columbia, Pamela Reed, Phineas Young, Larry Soulsby and Alan Dreher in Support of their Motion to Dismiss or Alternatively for Summary Judgment ("D.C. Mem." [# 227] ) at 3), the illegal search claim against Reed and Young arising out of the events of February 1996 is still in the case.

In that same opinion, Judge Ross granted plaintiff permission to file his first amended complaint (concerning the events of October 23, 1995). *See id.* at 31-32. Following discovery, plaintiff submitted a proposed second amended complaint ("2d Am. Compl." [# 81] ), dated July 26, 1999, and sought permission to assert new claims on behalf of his children for damages that they allegedly suffered as a result of the searches. Plaintiff also requested leave to replead certain claims against Tucker, Reed, and Young, and to add several defendants to the action, including the District and D.C. police officials Dreher and Soulsby. *See generally* 2d Am. Compl. FN4 In an Opinion and Order dated June 18, 2003 ("6/18/03 Op." [# 152] ), Judge Ross adopted this Court's 3/26/03 Report and Recommendation ("3/26/03 R & R" [# 148] ) and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

granted plaintiff permission to amend his complaint to assert claims against the District, as well as against Dreher and Soulsby in their official capacities, and otherwise denied plaintiff's motion to further amend his complaint.

> FN4. Dreher is the former Commander of the D.C. Police's Homicide Division; Soulsby is the former Chief of Police. D.C. Mem. [# 227] at 7.

Thereafter, this Court reopened discovery for the limited purpose of permitting plaintiff to serve discovery demands on Dreher and Soulsby. *See* 6/27/03 Memorandum and Order ("6/27/03 M & O" [# 155] ). Prior to the close of this supplemental discovery period, plaintiff moved to amend his complaint for a third time, and submitted a proposed third amended complaint, which, liberally construed, contains the following new allegations concerning the October 1995 search: (1) a demand for damages for loss of business income, *see* 3d Am. Compl. at 17-18 [# 154]; FN5 (2) common law tort claims FN6 against Tucker, Reed, Young, and the District, *see id.* at 8, 10; (3) claims against Dreher and Soulsby, in their individual capacities, for violations of the Fourth Amendment and plaintiff's due process rights, *see id.* at 1, 12-16; and (4) due process claims against Dreher and Soulsby in their official capacities and against the District, *see id.* at 13-14, 15-16. Plaintiff also sought to replead the claims already asserted in his first two amended complaints, concerning the 1995 search: his Fourth Amendment and his due process claims against Tucker, Reed, and Young, *see* 3d Am. Compl. at 9-12; his Fourth Amendment claim against the District pursuant to *Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), *see* 3d Am. Compl. at 12-15; and his Fourth Amendment official capacity claims against Dreher and Soulsby, *see id.* at 12, 14. All defendants opposed the filing of the proposed third amended complaint or portions thereof. FN7

> FN5. Unless otherwise indicated, references to the third amended complaint are to pages, not paragraphs.

> FN6. *See infra* note 13.

> FN7. While plaintiff's motion to amend his

complaint for the third time was still pending, plaintiff also filed multiple dispositive motions and applications against defendants with respect to their alleged discovery practices, all of which were denied by this Court. *See generally* 3/4/05 Report and Recommendation [# 200]; 3/7/05 Memorandum and Order [# 202]; 3/30/05 Memorandum and Order [# 206].

*3 On April 28, 2005, this Court granted plaintiff's motion to amend his complaint for the third time. Noting that defendants had not opposed several of plaintiff's proposed claims, the Court permitted plaintiff to proceed with his individual capacity claims against Dreher and Soulsby; tort claims against Tucker, Reed, Young, and the District; and due process claims against Dreher, Soulsby, and the District. The Court also permitted plaintiff to proceed with his claim for loss of business, over defendants' objection. *See* 4/28/05 M & O [# 207] at 9-15. In response to defendants' concern that plaintiff's loss of business claim would unduly prejudice the defense and prolong litigation through potentially costly discovery, the Court set a briefing schedule for dispositive motions with respect to those claims for which discovery was complete, and deferred discovery on the loss of business claims until the resolution of any dispositive motions related to the third amended complaint. *Id.* at 13, 19. FN8

> FN8. During the pendency of plaintiff's motion to amend his complaint for the third time, the D.C. defendants filed a procedurally defective dispositive motion, which this Court declined to address; the D.C. defendants were granted leave to file a revised motion. *See* 4/28/05 M & O [# 207] at 16-19.

On May 27, 2005, Tucker again moved to dismiss or for summary judgment. *See generally* Defendant Special Agent Nathan Tucker's Memorandum of Law in Support of His Motion to Dismiss or in the Alternative for Summary Judgment on All Claims Asserted in the Third Amended Complaint ("Tucker Mem." [# 215] ). The D.C. defendants' motion to dismiss or for summary judgment was filed soon after, on May 31, 2005. *See generally* D.C. Mem. [# 227]. FN9 Plaintiff thereafter opposed the motions filed by Tucker and the D.C. defendants, adding

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

cross-motions for summary judgment against both sets of defendants. *See generally* Plaintiff Dockery's Opposition to Defendant Tucker's Motion for Summary Judgment and [ ] Cross-Motion for Summary Judgment on Complaint, filed 8/3/05 ("Pl.Mem.(Tucker)" [# 241] ); Plaintiff Dockery['s] Opposition to Defendants, District of Columbia[,] Larry Soulsby, Alan Dreher, Pamela Reed, and Phineas Young's Motion for Summary Judgment and Plaintiff['s] Cross-Claim against Adverse Party Defendants, for Summary Judgment, filed 8/18/05 ("Pl.Mem. (D.C.)" [# 246] ). On September 8 and 9, 2005, respectively, both sets of defendants replied to plaintiff's submissions. *See generally* Reply Memorandum of Defendants, District of Columbia, Pamela Reed, Phineas Young, Larry Soulsby and Alan Dreher to Plaintiff Dockery's Opposition Papers and in Further Support of their Motion to Dismiss or Alternatively for Summary Judgment, dated September 8, 2005 ("D.C. Reply" [# 257] ); Defendant Special Agent Nathan Tucker's Reply Memorandum of Law in Further Support of Motion to Dismiss or in the Alternative for Summary Judgment on All Claims Asserted in the Third Amended Complaint, dated September 9, 2005 ("Tucker Reply" [# 258] ).

> FN9. The D.C. defendants' memorandum of law was submitted twice electronically and appears as docket entries # 227 and # 228.

On November 9, 2005, this Court provided plaintiff with a (second) copy of its Local Civil Rules and directed him to comply with Local Rule 56.1 by submitting statements of undisputed facts in response to those offered by Tucker and the D.C. defendants. *See* 11/9/05 Order [of Judge Mann] [# 261] at 3; Defendant Special Agent Nathan Tucker's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Tucker 56.1" [# 216] ); D.C. Defendants Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("D.C. 56.1" [# 224] ). Plaintiff submitted the requested Rule 56.1 Statements on December 9 and 22, 2005, respectively. *See* Plaintiff's Statement of Material Facts in Issue in Response to Statement of Material Facts to Which Defendant Tucker Contends There Is No Genuine Dispute, dated 11/28/05 ("Pl. 56.1 (Tucker)" [# 264] ); Plaintiff's Response to Statement of Material Facts as to Which DC[ ] Defendants Contend[ ] There Is No Genuine Issue and/or Undisputed

Facts, dated 11/28/05 ("Pl. 56.1 (D.C.)" [# 265] ).

### FACTUAL OVERVIEW

**I. Defendants' Version**

**\*4** Defendants proffer evidence of the following sequence of events. On August 12, 1995, D.C. Detective Phineas Young filed an affidavit in support of an arrest warrant alleging that plaintiff had obstructed justice by intimidating and threatening to kill the family of a grand jury witness who was expected to testify about plaintiff's involvement in the April 1995 murder of one Melvin Jones. *See* Affidavit of Phineas Young in Support of Motion to Dismiss ("Young Aff." [# 225] ) ¶ 2; Affidavit in Support of an Arrest Warrant [# 217] (submitted as Exhibit B to the Declaration of Special Agent Nathan Tucker in Support of Summary Judgment Motion ["Tucker Decl."] ). A warrant for plaintiff's arrest on this charge was issued by the D.C. Superior Court on August 12, 1995, and was reapproved on August 14, 1995. *See* Tucker 56.1 [# 216] ¶ 6; D.C. 56.1 [# 224] ¶ 2; Tucker Decl. [# 217] Ex. B.

On October 18, 1995, the FBI's Washington Field Office forwarded to the FBI's New York Division a lead referencing the obstruction of justice warrant and setting forth plaintiff's suspected whereabouts. *See* [FBI Lead] (Tucker Decl. Ex. A [# 217] ). The lead listed as enclosures a photograph of plaintiff and the 1995 warrant, and further advised that plaintiff "may be located in the vicinity of '3 Star Grocery,' 2127 Pitkin Avenue, Brooklyn, New York, telephone numbers 718-495-4730 and 800-881-4730." *Id.*

On October 23, 1995, on the basis of the lead and following a request by Detective Reed that the FBI conduct a "turn-up" for Dockery at the Brooklyn address on file (*see* Affidavit of Pamela Reed in Support of Motion to Dismiss ("Reed Aff." [# 226] ) ¶¶ 3-4; [Trial Testimony of Pamela Reed] (Ex. J. to Pl. Mem. (Tucker) [# 241] at 78)), an FBI Fugitive Task Force-comprised of seven agents including Tucker and Sam Alston-commenced surveillance at the Pitken Avenue address, "where Dockery was suspected of dwelling." Tucker Decl. [# 217] ¶ 7. Reed and Young deny that they were in New York. Reed Aff. [# 226] ¶ 4; Young Aff. [# 225] ¶ 4. During the course of this surveillance, Tucker claims to have seen plaintiff with a woman, later identified

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

as Denise Sutton, in the window of a second-floor apartment. *See* Tucker Decl. [# 217] ¶ 8; [Undated Excerpt of Testimony of Special Agent Nathan Tucker, D.C. Superior Court] (attached to Plaintiff's Motion in Opposing Defendant [L]egal [A]id Attorney Motion [....] ("Mot. Opposing Legal Aid" [# 32] )) at 222.

After announcing their purpose and authority and being denied entry by Sutton, the FBI Task Force forced entry into the building with a battering ram. Tucker Decl. [# 217] ¶ 9; Affidavit of Denise Sutton ("Sutton Aff.") (Matthews Decl. [# 219] Ex. H) ¶ 3. Upon entry, the agents encountered a pit bull and sought the assistance of the New York Police Department's Emergency Services Unit ("NYPD-ESU") in controlling the animal. Tucker Decl. [# 217] ¶ 9. NYPD-ESU officers thereafter commenced a search of the basement, grocery store, and residential apartments that comprised the Premises. *Id.* ¶ 10. During this search, the officers cut holes in the ceiling of a third-floor apartment and placed tear gas inside to render the area safe for inspection. *Id.* ¶ 11; [Undated Excerpt of Testimony of Special Agent Nathan Tucker, D.C. Superior Court] (Mot. Opposing Legal Aid [# 32] ) at 225-26. Inside the crawl space, the officers located identification belonging to plaintiff. Tucker Decl. [# 217] ¶ 11. Having failed to locate Dockery, the Task Force and NYPD-ESU discontinued their surveillance and search. *Id.* Prior to leaving the Premises, Tucker, accompanied by Agent Alston, entered the Premises for the first time to ensure that Dockery was not there. *Id.* ¶ 12.

**\*5** Following the search, the Task Force provided Sutton with padlocks and keys to replace the locks that had been removed from the grocery store's door by the NYPD-ESU, as well as a phone number with instructions stating how the landlord could report and make a claim for any damage to the property. *Id.* ¶ 13. Following the search, Michael Barrett, an acquaintance of Sutton's, replaced the front door of the building. Sutton Aff. ¶ 9 (Matthews Decl. [# 219] Ex. H). Defendants maintain that, as a consequence of the search, there was minimal damage to the front door and damage to the ceilings of a third-floor apartment. *See id.* ¶ 7; Tucker 56.1 ¶¶ 20, 23. Defendants deny that any other property was damaged or caused to be missing as a result of the conduct of law enforcement officers at the scene. Sutton Aff. ¶ 7; Tucker

56.1 [# 216] ¶¶ 65-67.

On February 6, 1996, another FBI Task Force, including Tucker, conducted surveillance of the Premises. Tucker Decl. [# 217] ¶¶ 15-16. Tucker observed plaintiff standing in the doorway, but Denise Sutton again refused to open the door. *Id.* ¶ 16. Following another forcible entry and search, plaintiff was eventually located in a hiding space beneath a dresser and carpet between the floorboards of the second floor and the ceiling of the first floor, and he was placed under arrest. *Id.* ¶¶ 17-18; *see* [Undated Excerpt of Testimony of Special Agent Nathan Tucker, D.C. Superior Court] (Mot. Opposing Legal Aid [# 32] ) at 231-34. Plaintiff was then taken to the FBI's Manhattan Office, where he was questioned by D.C. Detectives Reed and Young. *See* Reed Aff. [# 226] ¶ 5; Young Aff. [# 225] ¶ 5. Following plaintiff's arrest, the Clerk of the D.C. Superior Court was notified that the August 1995 warrant for plaintiff's arrest could be vacated. *See* Declaration of Assistant U.S. Attorney Kenneth Kohl in Support of Special Agent Tucker's Motion for Summary Judgment on the Third Amended Complaint ("Kohl Decl." [# 218] ) ¶ 14. The Clerk thereafter placed an "X" in red ink across the face of the warrant and wrote the word "VACATE" upon it. *Id.*

## II. Plaintiff's Version

Plaintiff, relying in part on hearsay, disputes the defense version of events. He maintains that the warrant and the FBI lead on which defendants rely for the 1995 entry into and search of the Premises were either falsely obtained or fraudulently manufactured after the search. *See* Plaintiff['s] Affidavit in Support of Cross-Motion for Summary Judgment ("Pl. Aff." [# 242] ) ¶ 4; Pl. Mem. (Tucker) [# 241] at 10-11. Plaintiff further contends that he was not at the Premises during the 1995 incident and, thus, disputes that Tucker's sighting of him justified defendants' forcible entry. *See* Pl. 56.1 (Tucker) [# 264] ¶ 16; Dockery Dep. [# 219] at 45-46 (Matthews Decl. Ex. E). Dockery likewise challenges defendants' description of the search as one performed exclusively by the NYPD. Specifically, plaintiff argues that Tucker, Reed, and Young were personally involved in the 1995 forced entry into and search and destruction of the Premises, as evidenced by Reed and Young's own alleged admissions during a conversation with plaintiff following his arrest in

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

February 1996. *See* Pl. 56.1 (D.C.) [# 265] ¶ 11; 7/5/01 Affidavit of Plaintiff ("7/5/01 Pl. Aff." [# 241] ) at 2-3. While claiming not to have been present during the 1995 search, Dockery also disputes the degree of damage caused by the search, and contends that defendants broke several interior apartment doors and two toilets, and intentionally left the doors of the Premises unsecured, resulting in looting by third parties and the loss of plaintiff's personal and business property. *See* 3d Am. Compl. at 4-8. Dockery denies that Sutton was provided with keys and locks to secure the store. *See* Pl. 56.1 (Tucker) [# 264] ¶ 22.

### *PENDING MOTIONS*

**\*6** Liberally construing plaintiff's third amended complaint, this Court has identified the following claims against Tucker, all relating to the 1995 incident: a common law tort claim; a claim for unauthorized search and seizure in violation of the Fourth Amendment; and a claim for deprivation of property without due process of law. *See* 3d Am. Compl. at 8-10. Tucker seeks dismissal of the tort and due process claims for failure to state a claim upon which relief may be granted and lack of subject matter jurisdiction, and seeks summary judgment on the Fourth Amendment claim.

Plaintiff also asserts a Fourth Amendment claim against Reed and Young for unauthorized search and seizure in connection with the events of 1996, [FN10] in addition to the following claims against the D.C. defendants for the events of 1995: common law tort claims against Reed, Young, and the District; claims under [42 U.S.C. § 1983](#) against Reed and Young for unauthorized search and seizure in violation of the Fourth Amendment; [section 1983](#) claims against Reed and Young for deprivation of property without due process of law; and claims against Dreher and Soulsby (in both their individual and official capacities), and a *Monell* claim against the District, for deprivation of property without due process, and violations of the Fourth Amendment. *See* 3d Am. Compl. at 10-16. The D.C. defendants move for dismissal of the official capacity claims against Dreher and Soulsby; for dismissal or summary judgment on the *Monell* claims against the District; [FN11] and for summary judgment on the due process, Fourth Amendment, and common law tort claims against the individual D.C. defendants for the events of 1995. [FN12]

[FN10.](#) As previously noted, *see supra* note 3, the D.C. defendants erroneously assume that plaintiff has abandoned his claim pertaining to the 1996 search, and they thus have not moved against that claim.

[FN11.](#) Defendants seek dismissal or, in the alternative, summary judgment on the *Monell* claims against the District. *See* D.C. Mem. [# 227] at 8-13. As plaintiff cannot survive a motion for summary judgment on the *Monell* claims, *see infra* pp. 54-57, this Court will assume that those claims are adequately pled.

[FN12.](#) The D.C. defendants also argue that the Court lacks personal jurisdiction over them. *See infra* note 29.

### *DISCUSSION*

**I. *Defendants' Motions to Dismiss***

In evaluating whether to grant a motion to dismiss pursuant to [Rule 12(b)(6) of the Federal Rules of Civil Procedure](#), the Court must accept all material factual allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff. *See [Hernandez v. Coughlin,](#)* [18 F.3d 133, 136 (2d Cir.1994).](#) Dismissal is warranted "only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *[Allen v. Westpoint-Pepperell, Inc.,](#)* [945 F.2d 40, 44 (2d Cir.1991)](#) (internal quotation marks and citation omitted). Where, as here, a *pro se* plaintiff alleges civil rights violations, "[t]his standard is applied with even greater force ...." *[Hernandez,](#)* [18 F.3d at 136.](#)

**A. Tucker's Jurisdictional Defense**

Tucker moves for dismissal of the common law tort claims against him for lack of subject matter jurisdiction. [FN13] *See* Tucker Mem. [# 215] at 2-8. This Court agrees that the state law claims against Tucker should be dismissed on this basis.

[FN13.](#) As noted in this Court's 4/28/05 Memorandum and Order, these claims appear to be brought under three possible theories of tort liability: conversion, trespass to chattels and/or

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

trespass to lands. *See* 4/28/05 M & O [# 207] at 5-6 n. 5.

"Under the Federal Tort Claims Act [ ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), 2671-2680], "Government employees enjoy absolute immunity against common law tort claims, and the only proper federal institutional defendant is the United States." *Marsden v. Fed. Bureau of Prisons,* 856 F.Supp. 832, 836 (S.D.N.Y.1994) (citing, *inter alia, United States v. Smith,* 499 U.S. 160, 161-65, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991)). In order to obtain the protection of absolute immunity, a federal employee must establish that, at the time of the alleged act, he "was acting within the scope of his office or employment ...." 28 U.S.C. § 2679(d)(1); *see also Smith,* 499 U.S. at 161. Here, plaintiff's pleading alleges that Tucker "was [an] employee and/or agent of the Federal Bureau of Investigation, at all times pertinent to the claims asserted ...," 3d Am. Compl. at 3, and that "[a]t the time Defendant Tucker committed [the alleged torts] ... [h]e was acting within the scope of his employment with[ ] ... the Federal Bureau of Investigation ...." *Id.* at 8. Thus, plaintiff should have brought his common law tort claims against the United States pursuant to the FTCA. *See Hightower v. United States,* 205 F.Supp.2d 146, 154 (S.D.N.Y.2002) ("Because the complaint expressly alleges that the individual defendants were each federal employees ... acting within 'the scope of their employment,' ... any state law torts claims based on their conduct would be cognizable, if at all, only as a suit against the United States under the FTCA.").[FN14]

FN14. The fact that plaintiff sued Tucker only in his individual capacity, *see* 3d Am. Compl. at 1, does not destroy Tucker's immunity under the FTCA because Tucker was alleged to have acted within the scope of his employment. *See Smith,* 499 U.S. at 163 n. 3 & 173 (FTCA was designed to prevent federal employees from being sued in their personal capacities for torts committed while acting within the scope of their employment); *accord Wilson v. Drake,* 87 F.3d 1073, 1076 (9th Cir.1996); *Konarski v. Brown,* 293 F.Supp.2d 70, 72 (D.D.C.2003); *Ramirez v. Obermaier,* No. 91 Civ. 7120(RPP), 1992 WL 320985, at *7 (S.D.N.Y. Oct.28, 1992); *Llarena*

*v. Womble,* No. 90 CIV. 0592(JSM), 1990 WL 165738, at *2 (S.D.N.Y. Oct.18, 1990).

Nor does plaintiff's allegation that Tucker "committed an improper performance of his duties," 3d Am. Compl. at 8, deprive Tucker of the protection of the FTCA. "The question of whether the act was wrongful is a different one from whether the act occurred while the employee was acting within the scope of his employment." *Rivera v. United States,* 928 F.2d 592, 608 (2d Cir.1991). In language particularly apt here, the Second Circuit held in *Rivera* that, regardless of whether federal law enforcement officers "performed wrongful acts, such as entering unannounced to execute ... warrants or using excessively intrusive means of executing the warrants, the execution of the warrants was nonetheless within the scope of their employment." *Id.* at 608-09.

**\*7** As neither party disputes that Tucker was acting in the scope of his employment at the time of the alleged acts, *see* Tucker Mem. at 2-3; 3d Am. Compl. at 8, the Court should substitute the United States as the proper defendant to plaintiff's tort claims, *see* 28 U.S.C. § 2679(b)(1) (providing that suit against the United States under the FTCA is the exclusive damages remedy for common law torts committed by a federal employee acting within the scope of his employment); *Harbury v. Hayden,* Civil Action No. 96-438(CKK), 444 F.Supp.2d 19, 2006 WL 2212696, at *6 (D.D.C. Aug.1, 2006) ("[U]pon challenge or a *sua sponte* inquiry, the federal court may determine independently whether [an] employee acted within the scope of employment and, therefore, whether to substitute the federal government as the proper defendant."), and to dismiss these claims as against Tucker. *See Rivera v. Morris Heights Health Ctr.,* No. 05 Civ. 10154, 2006 WL 345855, at *2 (S.D.N.Y. Feb. 14, 2006); *Asto v. Mirandona,* 372 F.Supp.2d 702, 710-11 (E.D.N.Y.2005).[FN15]

FN15. Plaintiff's argument that Tucker waived his objection to subject matter jurisdiction (*see* Pl. Mem. (Tucker) [# 241] at 4-6) is without merit, as challenges to subject matter jurisdiction

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

may be raised at any time, and indeed may be raised by the Court *sua sponte. See* Fed.R.Civ.P. 12(h)(3).

Although plaintiff maintains that Tucker's actions were performed within the scope of his employment, he argues that his claim is, nevertheless, not governed by the FTCA because Tucker's actions fall outside the scope of the FTCA's "discretionary function exception" ("DFE") to liability. Pl. Mem. (Tucker) [# 241] at 9-12. Under the DFE, the United States cannot be found liable with respect to "[a]ny claim ... based upon the exercise or performance ... [of] a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *see United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991).

Plaintiff misconstrues the DFE, which carves out an exception to governmental liability where the conduct complained of involved discretionary functions, but does not create liability on the part of federal officers for acts not encompassed within the DFE. Thus, even assuming that Tucker's acts were nondiscretionary or contrary to FBI policy, the unavailability of the DFE would merely remove one impediment to a claim against the United States, but would not allow a tort claim against Tucker himself. *See Berkovitz by Berkovitz v. United States,* 486 U.S. 531, 546-47, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *Leone v. United States,* 690 F.Supp. 1182, 1188 (E.D.N.Y.1988); *see also Wilson v. United States,* 959 F.2d 12, 15 (2d Cir.1992) (stating that, when an exception to the FTCA does not apply, "the *federal government* remains liable for the intentional torts of [its] officers.") (emphasis added).

Even allowing for this substitution, however, this Court lacks jurisdiction over the tort claim asserted here, given plaintiff's noncompliance with the exhaustion requirement of the FTCA. Federal law provides that an individual may not institute an action in tort against the United States based on the acts or omissions of a federal employee, "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675; *see also* 28 U.S.C. § 2401 ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues ...."). "This requirement is jurisdictional and cannot be waived." *Celestine v. Mt. Vernon Neighborhood Health Ctr.,* 403 F.3d 76, 82 (2d Cir.2005) (citing *McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) (affirming the dismissal of a *pro se* plaintiff's complaint for failure to comply with the FTCA's exhaustion requirement), and *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994)); *see also Millares Guiraldes de Tineo v. United States,* 137 F.3d 715, 720 (2d Cir.1998).

Plaintiff does not (and indeed cannot) contend that he sought in writing and obtained an administrative disposition of his claim from the FBI before filing the instant action. *See generally* Declaration of Richard M. Walsh (Matthews Decl. [# 219] Ex. J). Thus, as this Court previously concluded (*see* 3/26/03 R & R [# 148] at 15-16), plaintiff cannot now maintain an action in tort against the United States.[FN16] Accordingly, plaintiff's tort claim against the United States, like that against Tucker, should be dismissed for lack of subject matter jurisdiction.[FN17]

FN16. Plaintiff complains that, following the 1995 search of the Premises, Tucker left inadequate instructions regarding plaintiff's administrative remedies. *See* Pl. Mem. (Tucker) [# 241] at 2. The burden is on plaintiff to plead and prove that he timely complied with the statutory exhaustion requirement. *See In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 210, 214 (2d Cir.1987). Where, as here, the plaintiff invokes the doctrine of equitable tolling to excuse his dereliction, he must allege and establish (1) "extraordinary circumstances 'beyond his

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

control' " that prevented him from timely filing his administrative claim, and/or (2) affirmative conduct on defendant's part that concealed defendant's status as a federal actor and thus the applicability of the FTCA. *See Valdez ex rel. Donely v. United States,* 415 F.Supp.2d 345, 349-50 (S.D.N.Y.2006); *Bowman v. U.S. Postal Serv.,* No. 02 Civ. 6138(SHS), 2003 WL 1395821, at *3-4 (S.D.N.Y. Mar.20, 2003); *see generally Celestine,* 403 F.3d at 83-84 (explaining the limited applicability of the equitable tolling doctrine in FTCA cases). Plaintiff's allegation of inadequate instructions is insufficient to warrant equitable tolling. *See, e.g., Valdez,* 415 F.Supp.2d at 349-51 (rejecting plaintiff's claim for equitable tolling where plaintiff failed to set forth any facts in support of his claim that defendants fraudulently concealed or kept plaintiff from learning of his cause of action against them); *Van Eck v. Cimahosky,* 329 F.Supp.2d 265, 269 (D.Conn.2004) (holding that equitable tolling was not warranted on the basis of defendant's allegedly improper notice of administrative decision); *Bowman,* 2003 WL 1395821, at *4-5 (rejecting *pro se* plaintiff's claim that equitable tolling was warranted where (1) several agencies had failed to assist him with his claim; (2) he was unable to obtain certain medical records pertaining to his claim, and (3) he was blind in one eye); *see also Fuentes v. Park,* No. 03 Civ. 2660(RMB), 2005 WL 911442, at *2-3 (S.D.N.Y. Apr.18, 2005) (dismissing *pro se* plaintiff's claim for lack of subject matter jurisdiction where, due to his ignorance of exhaustion requirement, plaintiff had failed to exhaust his administrative remedies under the FTCA).

FN17. In 1988, Congress enacted the Federal Employees Liability Reform and Tort Compensation Act ("the Westfall Act"), Pub.L. 100-694, 102 Stat. 4563 (1988), which amended the FTCA to "expressly provide[ ] that while the administrative-exhaustion requirement would apply to all actions, *even those removed from state court,* plaintiffs would be given an

opportunity, after the removal, to exhaust those remedies." *Celestine,* 403 F.3d at 83. Specifically, the Westfall Act provides, in relevant part, that where the United States is substituted as a defendant, the plaintiff has an additional 60 days to exhaust his administrative remedies, provided his "claim would have been timely had it been filed on the date the underlying civil action was commenced." 28 U.S.C. § 2679(d)(5).

As neither plaintiff nor Tucker has addressed whether the Westfall Act applies in non-removal cases and, if so, its impact on plaintiff's tort claims, those issues are not now before the Court. *See generally Rivera,* 2006 WL 345855, at *3 n. 1.

**B. Standing**

At least one aspect of plaintiff's Fourth Amendment claims is subject to dismissal. Liberally construing plaintiff's pleading, he appears to allege that the constitutional rights of third parties were violated by defendants' "unauthorized" entry into and search of the second-floor apartment of Ilma Davis (Apartment # 2R) FN18 and ground-floor apartment of plaintiff's children (Apartment # 1RR). *See generally* 3d Am. Compl. at 6-7.FN19 Citing this Court's Report and Recommendation of March 26, 2003 (see 3/26/03 R & R [# 148] at 5-7), Tucker contends that plaintiff lacks standing to assert the constitutional rights of others, including his children. *See* Tucker Mem. [# 215] at 11-12.

FN18. In his third amended complaint, plaintiff references Davis as "Elma Davis." 3d Am. Compl. at 7. In her affidavit, Davis identifies herself as "Ilma Davis." *See generally* Affidavit [of Ilma Davis] (Pl.Mem. (Tucker) [# 241] Ex. P).

FN19. For example, plaintiff states in his third amended complaint:

It is not known to Mr. Dockery what was missing from Ms. Davis['] apartment and the matter is left open for the parties to [ ] argue when Dockery provide[s] more evidence from

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

Ms. Davis. Therefore any damage and loss of property from Ms. Davis['] apartment is not waive[d] by plaintiff, due [to] defendants['] conduct in leaving Ms. Davis['] front door unfix[ed] and unsecured.

3d Am. Compl. at 7.

**\*8** It is well established that "[t]he right of a third party not named in [an] arrest warrant to the privacy of his home may not be invaded without a search warrant[.]" *United States v. Underwood,* 717 F.2d 482, 484 (9th Cir.1983) (citation and emphasis omitted). Importantly, however, "this right is personal to the home owner and cannot be asserted vicariously by the person named in the arrest warrant." *Id.* at 484; *accord Rakas v. Illinois,* 439 U.S. 128, 133-34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.") (internal quotation marks and citations omitted); *United States v. Haqq,* 278 F.3d 44, 47 (2d Cir.2002). Accordingly, plaintiff cannot assert Fourth Amendment claims on behalf of his children or Davis based on the entries into and searches of their apartments. *See also* 3/26/03 R & R [# 148] at 5-7 (non-attorney *pro se* party is not permitted to represent the interests of others, including his children). [FN20]

> [FN20.] Plaintiff claims that, after he purchased the building with his own funds, title was transferred to his two daughters, but that he remained "the sole managerial agent of the aforesaid premises" and, as such, has standing to challenge all "unauthorized general searches and seizure[s] of the apartments ...." 3d Am. Compl. at 7. The Court need not resolve the separate question of whether plaintiff had a reasonable expectation of privacy in portions of the Premises other than his own apartment-for example, his children's apartment, Davis's apartment, the basement, and the newly renovated third-floor apartments-as the parties have not raised or briefed this issue.

## C. Official Capacity Claims Against Dreher and Soulsby

Plaintiff sues D.C. officials Dreher and Soulsby in their official capacities, as well as the District itself, for violations of plaintiff's Fourth Amendment rights in connection with the 1995 search. *See* 3d Am. Compl. at 12-15. Dreher and Soulsby seek dismissal of the claims against them on the ground that "a suit against them in their official capacities is akin to a suit against the [District] itself." D.C. Mem. [# 227] at 8.

"Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Monell,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Thus, where both a municipality and an official in his official capacity are sued for the same acts under 42 U.S.C. § 1983, the claims are redundant, and the municipality may be substituted for the officials. *See Booker v. Bd. of Educ.,* 238 F.Supp.2d 469, 475 (N.D.N.Y.2002) (dismissing official capacity claims against individual defendants as redundant of *Monell* claims against municipality); *Snall v. City of New York,* No. 97-CV-5201 (ILG), 1998 WL 960296, at \*4 (E.D.N.Y. Dec.7, 1998) (same); *Rini v. Zwirn,* 886 F.Supp. 270, 281-82 (E.D.N.Y.1995) (same); *Orange v. County of Suffolk,* 830 F.Supp. 701, 706-07 (E.D.N.Y.1993) (same). Here, plaintiff's official capacity claims against Soulsby and Dreher are coextensive with his municipal liability claims against the District. It is therefore appropriate to grant Dreher and Soulsby's request that the official capacity claims against them be dismissed.

## II. *Defendants' Motions For Summary Judgment*

**\*9** All of the defense motions for summary judgment concern the claims arising out of the October 1995 search. Each defendant moves for summary judgment on plaintiff's Fourth Amendment claim, as well as on plaintiff's demand for damages; Reed and Young and the District also move for summary judgment on plaintiff's common law tort claims. [FN21] Further, as each defendant also challenges plaintiff's due process claims, and consideration of evidence beyond the complaint is

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

necessary to resolve this matter, defendants' motions on these claims will be reviewed under the summary judgment standard. [FN22]

> FN21. Defendants Soulsby and Dreher are not named in the common law tort claims.

> FN22. Although the D.C. defendants move to dismiss plaintiff's due process claims and, in the alternative, seek summary judgment on them (*see* D.C. Mem. [# 227] at 14-18), Tucker inartfully articulates his challenge to these claims as a motion to dismiss, albeit citing extra-pleading materials. *See* Tucker Mem. [# 215] at 8-11; *but see id.* at 25. As plaintiff likewise relies upon evidence outside the pleadings, this Court will, for the purposes of the present inquiry, convert Tucker's motion into one for summary judgment, as permitted by Fed.R.Civ.P. 12(b).

**A. Summary Judgment Standard**

Summary judgment may be granted only where the pleadings and evidence in the record "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see* Fed.R.Civ.P. 56(c). Where, as here, a defendant seeks "summary judgment against [the] party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995); *see Celotex,* 477 U.S. at 323 ("The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."); *Nora Beverages, Inc. v. Perrier Group of America, Inc.,* 164 F.3d 736, 742 (2d Cir.1998). Once the moving party has made the requisite showing, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations

omitted). In ruling on a motion for summary judgment, the Court must resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought. See *id.* at 255. Summary judgment "is properly granted only when no rational finder of fact could find in favor of the non-moving party." *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 134 (2d Cir.2000).

**B. Due Process Claims**

Plaintiff's latest pleading alleges that, "[i]n breaking into Mr. Dockery's premises, apartments, grocery store, and basement[;] ... conduct[ing] an unauthorized search[ ] and seizure of private property[;] destr[oying] ... [his] private premises[;] and [causing a] loss of [his] business ... [Tucker] violated the Fifth Amendment to the United States Constitution. As a result of such violation, Mr. Dockery was denied his protected property interest an[d] [ ]appropriate level of process ...." 3d Am. Compl. at 9-10. The pleading similarly alleges that defendants Reed and Young violated plaintiff's right to due process under the Fifth Amendment [FN23] by breaking into and searching plaintiff's property, and by leaving it "unsecured, without door and locks," thereby depriving him of a "protected property interest." *Id.* at 11-12. Plaintiff further claims that Dreher and Soulsby are responsible for these due process violations, based on their having established a policy or practice of such misconduct and having failed to properly train and supervise their homicide officers. *Id.* at 13-16. While it is not clear whether these allegations are intended to support procedural or substantive due process claims, under either theory plaintiff's claims fail as a matter of law. Therefore, defendants' motions with respect to plaintiff's due process claims should be granted.

> FN23. Plaintiff specifically alleges a denial of his "right to due process of law as protected by the *Fourteenth Amendment* ...." 3d Am. Compl. at 14 (emphasis added); *see also id.* at 11, 16. However, it is the Fifth (not the Fourteenth) Amendment that protects individuals from deprivations of property without due process by the District of Columbia and its employees. *See* Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954) ("The Fifth Amendment ... is applicable in the District of Columbia ....").

**1. Procedural Due Process**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

**\*10** To state a procedural due process claim, a plaintiff must allege that he was deprived of a protected property or liberty interest by governmental action and that such deprivation occurred without adequate process. *See Rosa R. v. Connelly,* 889 F.2d 435, 438 (2d Cir.1989); *Parsons v. Pond,* 126 F.Supp.2d 205, 214-15 (D.Conn.2000).* "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 880 (2d Cir.1996).

If a plaintiff can successfully prove that the deprivation of his property was the result of an "established state procedure," liability for a procedural due process violation may attach, despite the existence of post-deprivation remedies to address the harm alleged. *Butler v. Castro,* 896 F.2d 698, 700 (2d Cir.1990) ("[T]he existence of independent state relief does not defeat a Section 1983 claim where the deprivation complained of results from the operation of established state procedures."). Where, however, the acts alleged are "random" and "unauthorized," pre-deprivation procedures are not required, "since the [government] cannot know when such deprivations will occur." *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (internal quotation marks omitted). Accordingly, a deprivation of property will "not constitute a violation of the procedural requirements of the Due Process Clause ... until and unless [the government] ... refuses to provide a suitable postdeprivation remedy." *Id.*

### a. Tucker

The FTCA, which permits an action against the United States for torts cognizable under state law that are committed by federal employees acting within the scope of their employment, provides an adequate remedy for the property torts plaintiff alleges were committed by Tucker. 28 U.S.C. § 2679(b)(1). As plaintiff's property damage and seizure claims sound in conversion and trespass to chattels-causes of actions that are recognized under New York law, *see Mosseri v. Fed. Deposit Ins. Corp.,* 95 Civ. 723(BSJ), 97 Civ. 969(BSJ), 1999 WL 694289, at *20 (S.D.N.Y. Sept. 8, 1999) (noting the cognizability of a conversion cause of action under New York law)-plaintiff could have sought relief administratively and then under the FTCA. Having failed to avail himself of these procedures, plaintiff has not alleged and cannot establish a procedural due process violation. *See Ciambriello v. County of Nassau,* 292 F.3d 307, 323 (2d Cir.2002) ("[A] procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies.") (quoting *New York State Nat'l Org. For Women v. Pataki,* 261 F.3d 156, 169 (2d Cir.2001) (emphasis omitted)); *Estes-El v. New York,* 552 F.Supp. 885, 889 (S.D.N.Y.1982) (holding that New York procedures for remedies for governmental taking of property-including suits for common law torts such as trespass to property, "appear adequate"; "[u]ntil plaintiff can demonstrate that he has availed himself of these procedures, and that they do not provide due process, he cannot prove his property was taken without due process."). [FN24]

> FN24. Plaintiff acknowledges the existence of post-deprivation remedies for the injuries he alleges, but challenges the adequacy of such relief. *See* Pl. Mem. (Tucker) [# 241] at 1-2. Specifically, plaintiff contends that the information provided to him for making a damage report to the FBI was insufficient, in that the number provided by the agency went unanswered during several calls by plaintiff and Denise Sutton over a three-month period. *See id.* at 2. Plaintiff additionally denies that he or Sutton was provided with instructions about how to make a claim to the FBI (Pl. 56.1 (Tucker) ¶ 24) and thus claims that he was unaware of the requirements of the FTCA and his rights thereunder. Pl. Mem. (Tucker) at 2. Plaintiff does not aver that he ever filed a formal, written complaint with the FBI, the District of Columbia, the D.C. Police Department, or the individual defendants.
>
> Neither plaintiff's professed ignorance of the law nor the FBI's allegedly ineffective telephone contact information is sufficient to establish a procedural due process violation.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

Plaintiff's unawareness of his post-deprivation remedies under federal and state law does not render the remedies inadequate to address the harms alleged. *See Fox v. Van Oosterum, 987 F.Supp. 597, 605-06 (W.D.Mich.1997)* (plaintiff failed to prove the inadequacy of post-deprivation remedies despite his "insufficient education, lack of knowledge of the law, indigency and incarceration"). In any event, because plaintiff failed to comply with the procedural requirements of the FTCA, which requires that a plaintiff submit *written* notice of claim to the relevant federal agency before commencing a civil action against the same, *see 28 C.F.R. § 14.2* ("For purposes of the ... [FTCA], a claim shall be deemed to have been presented when a Federal agency receives from a claimant ... written notification of an incident, accompanied by a claim for money damages in a sum certain ...."), it is of no constitutional consequence that the FBI's telephone procedure, whatever its purpose, was inoperable or ineffective.

### b. D.C. defendants

**\*11** Plaintiff similarly alleges that the D.C. defendants deprived him of due process through the intentional and malicious acts of Reed and Young, and the deliberate indifference of Soulsby and Dreher. *See* 3d Am. Compl. at 10-16.

As the State of New York, where the injury was allegedly inflicted, provides a remedy for such acts in the form of a common law tort action, *see Sch. of Visual Arts v. Kuprewicz, 3 Misc.3d 278, 771 N.Y.S.2d 804, 807 (Sup.Ct. N.Y. County 2003); Capital Distribs. Servs., Ltd. v. Ducor Express Airlines, Inc., No. 04 CV 5303(NG)(VVP), 2006 WL 2041574, at \*10 (E.D.N.Y. July 21, 2006)*, plaintiff must seek relief through those state law remedies, not the federal due process clause. *See Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)* (stating that in determining whether a violation of procedural due process has occurred, "it is necessary to ... examine ... any remedies for erroneous deprivations provided by statute or tort law."); *Parratt v. Taylor, 451 U.S. 527, 544, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)* ("Although the [state's tort] remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under *§ 1983*, that does not mean that the state remedies are not adequate to satisfy the requirements of due process. The remedies provided could have fully compensated the respondent for the property loss he suffered, and we hold that they are sufficient to satisfy the requirements of due process."), *overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); Strong v. Torres, No. 03 C 292, 2004 WL 626144, at \*5 (N.D.Ill. Mar.26, 2004)* ("[Plaintiff] has recourse within the Illinois State courts and, therefore, no federal claim."). Plaintiff does not contest the availability or adequacy of the post-deprivation remedies for the alleged misconduct of the D.C. defendants. Indeed, by adding common law tort claims against Reed, Young, and the District of Columbia to his third amended complaint, plaintiff acknowledges the existence of such remedies. *See* 3d Am. Compl. at 10-11.

Moreover, to the extent that plaintiff argues that a procedural due process violation resulted from the D.C. defendants' established "custom, policy, or practice" of permitting unauthorized and destructive searches by its employees, this claim is unsupported by the record. Despite his having requested and received discovery on the policies and practices of the District of Columbia, plaintiff points to no evidence that the injuries he alleges were the product of an official policy or custom. *See infra* pp. 54-57. In the absence of such evidence, plaintiff cannot prove a procedural due process violation.

### 2. Substantive Due Process

In the event that plaintiff is seeking to hold defendants liable under a substantive due process theory of liability, such a claim cannot survive, given the existence of an explicit textual source of constitutional protection-the Fourth Amendment-for the injuries plaintiff alleges. "[W]here another provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claim under that explicit provision and 'not the more generalized notion of "substantive due process." ' " *Conn v. Gabbert, 526 U.S. 286, 293, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999)* (quoting *Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)*); *see Boroff v. Van West*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

_City Bd. of Educ.,_ 220 F.3d 465, 471 (6th Cir.2000) ("[T]he Supreme Court has repeatedly emphasized that substantive due process is not to be used as a fallback constitutional provision when another provision or amendment ... directly addresses the subject.").

**\*12** Plaintiff's allegations that defendants destroyed and seized his property by unlawfully entering into and searching the Premises, and by "maliciously" and "intentionally" leaving the Premises unsecured, _see_ 3d Am. Compl. at 8, 10, assert the kinds of harms that are cognizable under the Fourth Amendment, which protects against unreasonable searches and seizures by the government. U.S. Const. am. IV; _see Fox v. Van Oosterum,_ 987 F.Supp. 597, 607 (W.D.Mich.1997) ("[W]here property damages are the result of a seizure by state officials, plaintiff may state a Fourth Amendment claim ....") (citing _Bonds v. Cox,_ 20 F.3d 697, 702 (6th Cir.1994)). Even where a search is conducted pursuant to a valid warrant, "there exists a clearly established right not to incur unreasonable property damage during" the course of that search, _Foreman v. Beckwith,_ 260 F.Supp.2d 500, 505 (D.Conn.2003); _see also Bonds,_ 20 F.3d at 702 (plaintiff could assert claim under Fourth Amendment for property damage that occurred during execution of search warrant), and all searches are therefore "subject to judicial review as to [their] reasonableness." _Tarpley v. Greene,_ 684 F.2d 1, 8 (D.C.Cir.1982) (citing _Dalia v. United States,_ 441 U.S. 238, 258, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979)). Furthermore, since "[a] 'seizure' of property occurs when 'there is some meaningful interference with an individual's possessory interests in that property,' " _Soldal v. Cook County,_ 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (quoting _United States v. Jacobsen,_ 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)), damage to or destruction of property may constitute a seizure under the Fourth Amendment. _See Heidorf v. Town of Northumberland,_ 985 F.Supp. 250, 257 (N.D.N.Y.1997) ("[T]here can be no question that the demolition of plaintiff's Church amounted to a seizure within the meaning of the Fourth Amendment."); _see also Fuller v. Vines,_ 36 F.3d 65, 67 (9th Cir.1994) ("The destruction of property is meaningful interference constituting a seizure under the Fourth Amendment ....") (internal quotation marks and citations omitted); _Newsome v. Erwin,_ 137 F.Supp.2d 934, 943 (S.D.Ohio 2000) (shooting of pet lioness could amount to unreasonable

seizure under the Fourth Amendment).

Because plaintiff's destruction of property claims are cognizable under the Fourth Amendment, they should be analyzed under that constitutional provision, and not as substantive due process claims. _See Heidorf,_ 985 F.Supp. at 257. Therefore, assuming that plaintiff seeks recovery under a substantive due process theory of liability, these claims should be dismissed. _See id._ (holding that because plaintiff's claim that the defendants unreasonably demolished his church "fits squarely within the contours of the Fourth Amendment[ ] ... his substantive due process claim must be dismissed.").

**C. Personal Involvement Requirement Under Section 1983 and _Bivens_**

Claiming constitutional deprivations, plaintiff seeks relief from the District and the individual D.C. defendants under 42 U.S.C. § 1983, and from Tucker under _Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,_ 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); _see_ 3d Am. Compl. at 2, 11-16. In relevant part, section 1983 provides:

**\*13** Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983. "By its terms ... the statute creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." _City of Oklahoma City v. Tuttle,_ 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion); _accord Bartlett v. City of New York,_ No. CV0319161CPS, 2005 WL 887112, at \*5 (E.D.N.Y. Feb.11, 2005). Further, although the statute explicitly provides for relief against state or D.C. employees, it does not authorize suit against their federal counterparts. In recognition of this limitation, the Supreme Court held in _Bivens_ that "victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

despite the absence of any statute conferring such a right." *Carlson v. Green,* 446 U.S. 14, 18, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). "Though more limited in some respects ..., a *Bivens* action is the federal analog to suits brought against state officials under ... 42 U.S.C. § 1983." *Hartman v. Moore,* 547 U.S. 250, 126 S.Ct. 1695, 1700 n. 2, 164 L.Ed.2d 441 (Apr. 26, 2006).

In order to maintain an action against a federal or state officer or official under *Bivens* or section 1983, a plaintiff must establish specific facts demonstrating the defendant's personal involvement in the constitutional violations alleged. *See McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."); *Lonegan v. Hasty,* No. 04 CV 2743(NG)(VVP), 2006 WL 1707258, at *18 (E.D.N.Y. June 22, 2006) ("In an action seeking damages for a constitutional deprivation pursuant to *Bivens,* as in an action pursuant to Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983, ... personal involvement is a prerequisite to liability."); *Grullon v. Reid,* No. 97 CIV. 7616(RWS), 1999 WL 436457, at *7 (S.D.N.Y. June 24, 1999).

A plaintiff may demonstrate the requisite personal involvement either by proof of the defendant's direct participation in the alleged violation, or by that defendant's having acted as a supervisory official who either: (a) failed to remedy the violation once it was reported to him; (b) created a policy or custom that gave rise to the constitutional violation or permitted it to endure; or (c) demonstrated gross negligence in managing the subordinates at whose hands the violation occurred. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citations omitted); *Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 (2d Cir.1991) (quoting *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)). The Second Circuit has construed the phrase "direct participation" to include "personal participation by one who has knowledge of the facts that rendered the conduct illegal." *Provost v. City of Newburgh,* 262 F.3d 146, 155 (2d Cir.2001) (citations omitted). In this regard, liability may be found against "a person who, with knowledge of the illegality, participates in bringing about a violation of the victim's rights but does so in a manner that might be said to be 'indirect'...." *Id.*

On review of a motion for summary judgment or judgment as a matter of law,[FN25] "the issue is whether, viewing the evidence in the light most favorable to [plaintiff], a reasonable juror could have concluded that [defendant's] conduct satisfied any one of [the enumerated] criteria." *Id.* at 154.

> FN25. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 135, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) ("The standard for judgment as a matter of law under Rule 50 mirrors the standard for summary judgment under Rule 56.").

**1. Personal Involvement of Tucker**

**\*14** Tucker contends that he was not personally involved in the acts of which plaintiff complains. *See* Tucker Mem. [# 215] at 19. Specifically, Tucker avers that, during the October 23, 1995 search, "FBI Special Agent Sam Alston was the case agent for surveillance"-that is, Alston, not Tucker, was in charge of the October 1995 operation at the Premises. Tucker Decl. [# 217] ¶ 7. Tucker does, however, attest to his membership in the seven-agent FBI Task Force operating at the scene. *Id.* Without detailing his precise role in the surveillance, Tucker maintains that "Task Force agents observed Dockery and Denise Sutton through the second floor apartment window of the building[ ]" and that "[t]he agents announced their purpose and authority." *Id.* ¶ 8. He further attests that after waiting approximately twenty minutes for Sutton to open the door, "FBI agents forced the building door open with a battering ram [,]" *id.* ¶ 9, at which time NYPD Emergency Services Unit officers proceeded to search the Premises. *Id.* ¶¶ 9-10. After the NYPD's search, Tucker and Alston entered the building for the first time to verify that plaintiff was not inside. *Id.* ¶ 12.

While plaintiff concedes that Tucker may not have been the agent in charge of the October 1995 search, he argues that Tucker, acting with "numerous Federal Agent[s] conduct[ed] a General warrantless, nonexigent and nonconsensual entry" into the building. Pl. 56.1 (Tucker) [# 264] ¶ 18. Citing Tucker's testimony at Dockery's criminal trial, plaintiff argues that Tucker was in fact involved in the search.[FN26]

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

FN26. Tucker testified at trial: "We searched ... the location from room to room and we looked at all the obvious hiding places, and we didn't have any luck in discovering him." Pl. 56.1 (Tucker) [# 264] ¶ 21 (citing [7/30/98 Testimony of Special Agent Nathan Tucker, D.C. Superior Court] at 711 (attached as Ex. 5 to Plaintiff Dockery's Memorandum of Points and Authorities in Opposition to Defendant Tucker's Memorandum Opposing Plaintiff's Third Amended Complaint to Conform with His Evidence, dated 9/9/03 [# 172] )); *see also* [Undated Excerpt of Testimony of Special Agent Nathan Tucker, D.C. Superior Court] (attached to Mot. Opposing Legal Aid [# 32] ) at 223 (conceding that he entered the building and "found a pit bull when we got inside the main entrance ...."); [Undated Excerpt of Testimony of Special Agent Nathan Tucker, D.C. Superior Court] (attached to Pl. Mem. (Tucker) [# 241] as Ex. 221) at 224 ("Well, after speaking with [Denise Sutton] repeatedly and trying to get her to open the door, we had no choice but to knock it down.").

Even accepting Tucker's contention that his role in the search was secondary to that of the NYPD and Agent Alston, his admitted participation in the FBI Task Force and his descriptions at trial of the acts at the scene are sufficient evidence upon which a reasonable juror could conclude that Tucker was personally involved, even if indirectly, in the search that is the subject of plaintiff's claims.[FN27] *See Ricciuti v. New York City Transit Auth.,* 124 F.3d 123, 129-30 (2d Cir.1997) (reversing an award of summary judgment where material issue of fact remained as to defendant's personal involvement in fabrication of confession); *but cf. Djonbalic v. City of New York,* No. 99 CIV. 11398 SHSAJP, 2000 WL 1146631, at *11 (S.D.N.Y. Aug.14, 2000) (granting summary judgment based on lack of personal involvement where defendant agent "was not inside the building and therefore was not in a position to 'remedy the wrong' alleged ....") (citation omitted); *Howard v. Schoberle,* 907 F.Supp. 671, 681 (S.D.N.Y.1995) (granting summary judgment to an FBI officer; "[a]lthough [defendant] accompanied the

search team, she was not involved to any substantial degree with either Plaintiffs' arrests or the apartment search."). Therefore, Tucker is not entitled to summary judgment for lack of personal involvement in the search complained of.

FN27. Indeed, Tucker's testimony at Dockery's criminal trial could be construed to indicate his direct involvement in the search.

**2. Personal Involvement of Reed and Young**

**\*15** Plaintiff also seeks to hold Reed and Young liable for their alleged violation of plaintiff's Fourth Amendment rights through their participation in the search of the Premises on October 23, 1995. Reed and Young deny that they were present in New York during the 1995 search and thus deny responsibility for any violations related to the events in question. *See* Reed Aff. [# 226] ¶ 4; Young Aff. [# 225] ¶ 4.

In support of his claim, plaintiff provides an affidavit summarizing a conversation he claims to have had with Reed and Young in which they allegedly admitted their participation in the 1995 search.[FN28] Whatever the implausibility of Dockery's assertion, the Court is constrained, on this motion for summary judgment, to construe the facts in the light most favorable to the non-moving party. Viewed through this lens, the alleged admissions by defendants Reed and Young create a material issue of fact with respect to their personal involvement in the events of October 1995. *See Ricciuti,* 124 F.3d at 129-30. Accordingly, they are not entitled to summary judgment on this ground.[FN29]

FN28. Plaintiff states, in pertinent part, that, during his interrogation by Reed and Young following his arrest on February 6, 1996, "Reed and Young expressed their knowledge, and concern that, they too were inside the Three Star[ ] Grocery Store and the apartments helping the FBI and New York City police officers looking for Dockery." 8/18/05 Pl. Aff. (attached to Pl. Mem. (D.C.) [# 246] ) ¶ 5. In another affidavit, plaintiff elaborates: "Reed expressed her knowledge of being inside the Three Star [ ] Grocery Store and the apartments looking for

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

Mr. Dockery, because agents who she was with said they thought they saw Dockery inside the second floor window, so ... Reed and the FBI searched the entire premises, but Dockery was lucky he escaped that time." 7/5/01 Pl. Aff. (attached to Pl. Mem. (Tucker) [# 241] ) at 2.

Plaintiff has also submitted excerpts from Reed's testimony at plaintiff's criminal trial. In particular, plaintiff cites Reed's statement that prior to Dockery's arrest in February 1996, she had, on an earlier occasion, requested "a turn-up to locate Mr. Dockery at an address in Brooklyn." [Trial Testimony of Pamela Reed] (Ex. J. to Pl. Mem. (Tucker) [# 241] ) at 78. Contrary to plaintiff's assumption, a request by a police officer for law enforcement assistance outside his or her geographic jurisdiction does not, without more, establish the requesting officer's personal involvement in alleged misconduct occurring in the other jurisdiction.

FN29. The D.C. defendants alternatively assert that this Court lacks personal jurisdiction over them with respect to the 1995 search of the Premises because they "did not have any contact with the State of New York on the subject date." D.C. Mem. at 5. Plaintiff argues that the D.C. defendants have waived their challenge to the Court's jurisdiction by failing to interpose this defense in their earlier answers and moving papers. See Pl. Mem. (D.C.) at 3-4 (citing Fed.R.Civ.P. 12(g)).

Although the D.C. defendants previously moved against the third amended complaint, the defendants' earlier motion was not accepted, as it was procedurally defective. See 4/28/05 M & O [# 207] at 16-19. Thus, the instant motion, which (like their answer to the first amended complaint) includes an objection to personal jurisdiction as to each of the D.C. defendants, is the D.C. defendants' first responsive motion or pleading to the operative complaint. See D.C. Mem. at 5-6; D.C. Reply Mem. at 4-7. Accordingly, the D.C. defendants

have not waived their challenge to personal jurisdiction.

Nevertheless, Reed and Young are not entitled to summary judgment on this ground, as the very basis of their defense-that they were not present in New York during the 1995 entry and search-is disputed by the parties. See D.C. 56.1 [# 224] ¶ 11; Pl. 56.1 (D.C.) [# 265] ¶ 11; Pl. Aff. (attached to Pl. Mem. (Tucker) [# 241] ) at 2-3. Accordingly, as with Reed and Young's claim that they were not personally involved in the acts at the Premises for purposes of section 1983, the Court cannot determine whether Reed and Young had sufficient contacts with New York to establish personal jurisdiction over them.

As will be established, however, Dreher and Soulsby are entitled to dismissal of the claims against them, in light of plaintiff's failure to prove that they created or enforced a municipal policy or custom with respect to the 1995 acts. See infra pp. 37-39, 54-57. Because plaintiff fails to adduce any other facts to establish that Dreher and Soulsby had sufficient contacts with New York to justify personal jurisdiction over them, see, e.g., Ashi Metal Indus. Co. v. Superior Ct. of Cal., 480 U.S. 102, 108-09, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (O'Connor, J., plurality); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), plaintiff's claims against these defendants should also be dismissed for lack of personal jurisdiction.

**3. Personal Involvement of Dreher and Soulsby**

Plaintiff's Fourth Amendment claims against defendants Dreher and Soulsby, in their individual capacities, stand on a different footing.[FN30] Dreher and Soulsby challenge these claims on the ground that a suit against them in their individual capacities must be interpreted in this case as a claim against them in their official capacities, and thus, as against the District. D.C. Mem. [# 227] at 7; D.C. Reply [# 257] at 8-9. Citing

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

*Monell* as authority, Dreher and Soulsby thus maintain that plaintiff's individual capacity claims should be dismissed. FN30. As mentioned in this Court's Report and Recommendation of March 26, 2003, "[s]ince neither the original complaint nor the first amended complaint named Soulsby or Dreher, a suit against them in their individual capacity under 42 U.S.C. § 1983, would be time-barred by the ... three-year statute of limitations ...." 3/26/03 R & R at 16 n. 17. However, as Dreher and Soulsby failed to interpose a statute of limitations defense in either their opposition to plaintiff's motion to amend his complaint for the third time or in their pending motions, *see, e.g.,* 4/28/05 M & O [# 207] at 8-9, the Court will not raise that defense *sua sponte.*

In *Kentucky v. Graham,* the Supreme Court clarified that while claims against a government officer in his official capacity "generally represent only another way of pleading an action against an entity of which the agent is an officer," 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Monell,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)), a suit against an officer in his personal or individual capacity is distinct in that relief comes not from governmental assets but instead from the officer's own personal assets. *Kentucky v. Graham,* 473 U.S. at 166. Because plaintiff seeks through his individual capacity claims against Dreher and Soulsby to hold these officials personally liable for actions they allegedly took under the color of D.C. law, plaintiff's claims are not, in a legal sense, duplicative of his official capacity claims against the officers or of his claims against the District of Columbia.

Defendants' argument is, however, not without force. Under section 1983, a plaintiff may establish individual liability against an official by showing that "the official, acting under the color of state law, caused the deprivation of a federal right." *Kentucky v. Graham,* 473 U.S. at 166 (citing *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)). In the instant case, plaintiff fails to establish that Dreher and Soulsby "caused the deprivation" of his Fourth Amendment rights: plaintiff provides no admissible evidence that creates a material issue of fact with respect to whether Dreher and Soulsby (1) were

directly involved in the acts alleged; (2) "failed to remedy the wrong[s]" after being informed of them; (3) "created a policy or custom under which constitutional practices occurred, or allowed the continuance of such a policy or custom"; (4) were "grossly negligent in supervising subordinates"; or (5) demonstrated "deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring." *Colon,* 58 F.3d at 873 (internal quotation marks and citations omitted).

**\*16** Plaintiff does not and cannot claim that Dreher and Soulsby were directly involved in the 1995 search or that they even had knowledge of the events at issue, either before or after they occurred. Instead, plaintiff alleges that Dreher and Soulsby "established a Municipal policy, practice, or custom that violate[d] the Fourth Amendment ...." 3d Am. Compl. at 12, 14-15. However, as detailed in the section of this opinion addressing his *Monell* claims,FN31 plaintiff produces no admissible proof of the existence or creation of such a policy.FN32 Because plaintiff thus presents no material issue of fact with respect to the individual liability of Dreher and Soulsby, their motion for summary judgment on plaintiff's constitutional claims should be granted. *See, e.g., Tricoles v. Bumpus,* No. 05CV3728(JFB)(JO), 2006 WL 767897, at \*4 (E.D.N.Y. Mar. 23, 2006) (dismissing as "too vague and conclusory to state a claim" plaintiff's allegations that the Commissioner of the N.Y.S. Office of Children and Family Services had failed to train/supervise subordinates and/or established a custom/policy that caused plaintiff's injury, where plaintiff offered "no specific allegations of personal involvement by the Commissioner"); *Lewis v. Meloni,* 949 F.Supp. 158, 163-65 (W.D.N.Y.1996) (granting summary judgment in favor of Sheriff where plaintiff had failed to demonstrate the existence of material issues of fact with respect to the defendant's failure to supervise or train his subordinates, or defendant's deliberate indifference to the false arrests alleged); *Washington Square Post No. 1212 v. City of New York,* 720 F.Supp. 337, 345-47 (S.D.N.Y.1989) (granting summary judgment in favor of Police Commissioner in the absence of proof of personal involvement in warrantless and allegedly illegal search), *rev'd on other grounds,* 907 F.2d 1288 (2d Cir.1990).

FN31. *See infra* pp. 54-57.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

FN32. Indeed, plaintiff does not purport to have specific facts linking Dreher and Soulsby to the acts in question and asserts only that "[t]he identification of [a] municipal policymaker is solely a question of law for the Court." Pl. Mem. (D.C.) [# 246] at 12.

**D. Unlawful Entry and Destruction of Property in 1995**[FN33]

FN33. Claims against Tucker arising out of the February 1996 incident were previously dismissed, and Reed and Young have not moved against the original complaint, which contains the claims relating to 1996. *See supra* note 3.

Plaintiff alleges that in entering the Premises on October 23, 1995, defendants lacked the authority of an active warrant and, thus, violated plaintiff's Fourth Amendment rights by unlawfully entering (1) the apartment building, (2) the basement, (3) plaintiff's grocery store, (4) plaintiff's second-floor apartment (Apartment # 2F), (5) the Davis apartment (Apartment # 2R), (6) the apartment of plaintiff's daughters (Apartment # 1RR), and (7) two newly renovated apartments (Apartments # 3F and 3R). *See* 3d Am. Compl. at 5-7, 9, 11. Plaintiff additionally claims that defendants unreasonably destroyed entryways and fixtures in the building, and caused the loss of personal and business property by intentionally leaving the Premises unsecured, all in violation of the Fourth Amendment. *See id.* at 5-9, 11. The Court will first consider whether the entry was authorized by a valid warrant and will then examine the reasonableness of the 1995 search under the Fourth Amendment.

**1. Validity of the August 1995 Arrest Warrant**

**\*17** Consistent with the Fourth Amendment, the arrest of an individual in his home must be supported by "either: 1) a warrant; or 2) the existence of both probable cause and an exception to the warrant requirement." *Hogan v. Caputo,* No. 02-CV-1040(LEK/RFT), 2004 WL 1376395, at \*6 (N.D.N.Y. June 21, 2004) (citing *Payton v. New York,* 445 U.S. 573, 576, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and *Anthony v. City of New York,* 339 F.3d 129,

135 (2d Cir.2003)). When an officer has reason to believe that a suspect is at the suspect's residence,[FN34] an arrest warrant, like a search warrant, is sufficient to authorize the officer's entry into the suspect's home to effect his arrest. *See United States v. Lauter,* 57 F.3d 212, 214 (2d Cir.1995) (citing, *inter alia, Payton,* 445 U.S. at 603); *see also Steagald v. United States,* 451 U.S. 204, 214 n. 7, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) ("Because an arrest warrant authorizes the police to deprive a person of his liberty, it necessarily also authorizes a limited invasion of that person's privacy interest when it is necessary to arrest him in his home.").

FN34. *See* cases cited *infra* pp. 45-46.

In the instant case, plaintiff contends that the August 1995 arrest warrant on which defendants rely in support of their motion is a forgery, and that the other defense evidence concerning the warrant is either unverified or falsely manufactured. *See* Plaintiff['s] Affidavit in Support of Cross-Motion for Summary Judgment ("Pl. Aff." [# 242] ) ¶ 4; Pl. Mem. [# 241] at 10-11.

The validity and active nature of the warrant in question have already been judicially determined, albeit in a different action.[FN35] As the D.C. Superior Court upheld the 1995 arrest warrant in connection with plaintiff's underlying criminal case,[FN36] plaintiff is collaterally estopped from relitigating this issue. *See Doe v. Pfrommer,* 148 F.3d 73, 80-81 (2d Cir.1998) (upholding a court's right to invoke collateral estoppel *sua sponte* in the interest of the "strong public policy in economizing the use of judicial resources by avoiding relitigation ....").

FN35. Tucker argues that this issue was determined by Judge Ross in a prior opinion in this case. However, in the decision in question, dated September 24, 1998, Judge Ross reviewed the four warrants outstanding at the time of the *1996* search of the Premises, noting that "there is no question as to [the warrants'] validity," 9/24/98 Op. [# 44] at 23, but cautioning that "the active nature of one of the warrants is open to debate ...." *Id.* at 22. The referenced arrest warrant, dated August 12, 1995 and reapproved on August 14, 1995, "bears a large 'X' on its face, accompanied by the word 'VACATE'

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

without any indication of when it was vacated." *Id.* at 22 n. 11. Thus, while concluding that the 1996 entry was authorized, Judge Ross did not rule that the August 1995 warrant was active at the time of the 1995 search. *See id.* at 22, 23 & n. 11.

> FN36. *See* 1/14/02 Memorandum Opinion and Order Denying § 23-110 Motion ("1/14/02 Mem." [# 270] ), *United States v. Jasper Dockery,* Docket No. F-536-96.

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, the decisions of any state court "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738.FN37 Accordingly, pursuant to D.C. law, the Court in this action may not consider an issue previously presented to the D.C. court where that issue is "one that was actually litigated and decided in the prior case, after a final and valid disposition on the merits, after a full and fair opportunity for litigation by the same parties or their privies, [and] where the issue was necessarily decided in disposing of the first action, and not mere dictum." *Smith v. Jenkins,* 562 A.2d 610, 617 (D.C. Ct. of App.1989) (citing WRIGHT, MILLER & COOPER, *FEDERAL PRACTICE & PROCEDURE: JURISDICTION,* § 4416 (1981)); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."). "Principles of collateral estoppel may bar relitigation in a subsequent civil rights action in federal court of an issue that was previously decided in a state court criminal proceeding." *Owens v. Trader,* 873 F.2d 604, 606 (2d Cir.1989).

> FN37. The District of Columbia is considered a state for purposes of section 1738. *See* 28 U.S.C. § 1738 (referencing the judicial proceedings and legislative acts of "any State, Territory, or Possession of the United States"); *Synanon Church v. United States,* 579 F.Supp. 967, 974 (D.D.C.1984), *aff'd,* 820 F.2d 421

(D.C.Cir.1987); *Washington Gas Light Co. v. Hsu,* 478 F.Supp. 1262, 1263-64 (D.Md.1979).

**\*18** Plaintiff's challenge to the 1995 warrant, which he presented to the D.C. Superior Court through a collateral attack on his criminal conviction, has already been litigated and decided. Specifically, plaintiff asserted that his trial counsel was ineffective in having failed to move to suppress testimony concerning the 1995 search of the Premises.FN38 D.C. Superior Court Judge Mary Ellen Abrecht rejected Dockery's ineffectiveness claim. *See* 1/14/02 Mem. [# 270] at 5-6. The court held that Dockery had "proffer[ed] no reason for the Court to have found the October search unlawful, *given the existence at the time of a valid felony arrest warrant for obstruction of justice ...." Id.* (emphasis added). The D.C. court also rejected Dockery's claim that Tucker and the D.C. officers had lied at plaintiff's criminal trial about the existence of the warrant and of National Crime Information Center ("NCIC") records documenting its issuance. *Id.* at 17-19. Specifically, Judge Abrecht explained, "Superior Court records corroborate [Reed and Tucker's] testimony about the existence of an obstruction of justice warrant before the October 1995 search .... No confusion or absence of record keeping over faxes or NCIC printouts ... erases the fact that law enforcement officials had been commanded by the Superior Court to arrest Dockery." *Id.* at 20.

> FN38. Plaintiff's motion before the D.C. Superior Court is referenced in that court's opinion but is not part of the record in the instant action.

Thus, the validity and active nature of the August 1995 warrant were actually litigated and decided in the post-conviction proceeding, at which plaintiff had a full and fair opportunity to press the argument.FN39 In these circumstances, the ruling is entitled to preclusive effect under D.C. law. *See District of Columbia v. Gould,* 852 A.2d 50, 55 (D.C. Ct. of App.2004) ( "Under the doctrine of collateral estoppel ... once an issue of fact or law has been actually and necessarily determined against a party by a court of competent jurisdiction, that determination is conclusive on that party in any subsequent proceeding against that party based on a different cause of action."). *A fortiori,* plaintiff is collaterally estopped from relitigating in federal court his challenge to the 1995

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

warrant, notwithstanding his *pro se* status. *See Conte v. Justice,* 996 F.2d 1398, 1400 (2d Cir.1993); *Bonilla v. Brancato,* No. 99 Civ. 10657 LTSJCF, 2002 WL 31093614, at *5 (S.D.N.Y. Sept.18, 2002) ("A plaintiff's status as a *pro se* litigant does not, by itself, preclude barring a claim under the doctrine of collateral estoppel, but it is relevant to a determination of the fairness of his prior opportunity to be heard.").[FN40]

> **FN39.** Judge Abrecht's decision is a final one, as Dockery filed a notice of appeal to the D.C. Court of Appeals but then failed to perfect it. *See Dockery v. United States,* 853 A.2d 687, 691 n. 5 (D.C. Ct. of App.2004) (reviewing plaintiff's three consolidated appeals).

> **FN40.** Judge Ross previously declined to give preclusive effect to a different ruling by the D.C. Superior Court, concerning the validity of a 1996 bench warrant. However, there the status of the 1996 warrant was not central to the D.C. court's resolution of the matter at hand-to wit, a motion to dismiss the indictment for lack of jurisdiction. *See* 9/24/98 Op. [# 44] at 18-19. Here, by contrast, the determination of the validity of the 1995 warrant was necessary to the resolution of Dockery's ineffective assistance of counsel claim predicated on his attorney's failure to challenge the October 1995 search. *See Bigelow v. Knight,* 737 F.Supp. 669, 671 (D.D.C.1990) (plaintiff's motion alleging ineffective assistance of trial counsel was entitled to preclusive effect in subsequent federal action).

Even assuming it did not merit preclusive effect, Judge Abrecht's decision, together with other evidence in the record, establishes that the August 1995 warrant was both valid and active at the time of the October 1995 search. Specifically, Tucker proffers the declaration of Assistant United States Attorney Kenneth Kohl, who participated in the preparation of the August 1995 warrant. *See generally* Kohl Decl. [# 218]. Kohl attests that the warrant was not vacated until after Dockery's arrest in February 1996,[FN41] at which time the clerk of the D.C. Superior Court was notified that it could be withdrawn and thereafter marked an "X" and the word "VACATE" on the

face of the warrant. *Id.* ¶ 14. Additionally, Tucker produces an FBI lead, dated October 18, 1995-five days before the challenged 1995 search-that bears the words "ARMED AND DANGEROUS" and states, in pertinent part, that "[a]n arrest warrant was issued for captioned subject [Dockery] by the District of Columbia Superior Court on 8/14/05, for Obstruction of Justice." Tucker Decl. Ex. A [# 217] at 1. The lead lists as enclosures a copy of the August 1995 arrest warrant and a photograph of Dockery. *Id.* This evidence supports Tucker's contention that the warrant was active at the time of the October 1995 search.

> **FN41.** It is undisputed that plaintiff was arrested by an FBI Fugitive Task Force at the Premises on February 6, 1996.

**\*19** Plaintiff's challenge to this evidence is unavailing. As support for his suggestion that the 1995 warrant was fraudulently manufactured after the October 1995 search, plaintiff offers a printout from the NCIC, dated March 15, 2000, that lists no warrant dated August 12, 1995, and, for the years 1995 and 1996, includes only a bench warrant dated February 2, 1996. *See* [NCIC Report] (attached to Pl. Mem. (Tucker) [# 241] as Ex. 29). Plaintiff erroneously assumes that the NCIC database is a cumulative record of every warrant ever in existence for a particular individual. *See* Pl. Mem. (Tucker) [# 241] at 13-14. In fact, warrants are regularly removed from the database once they have been satisfied or when other official law enforcement action has been taken in a case. *See Arizona v. Evans,* 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) (reviewing a defense motion to suppress evidence on the ground that the evidence was seized through an unlawful arrest based on a quashed warrant that had erroneously remained in the computerized database of the Sheriff's Office); *id.* at 26 (Ginsburg, J., dissenting) (discussing NCIC database). Consequently, a warrant that was satisfied and vacated in February 1996 would ordinarily not appear on an NCIC printout from March 2000.

With the exception of the NCIC printout, plaintiff provides only conclusory allegations of the arrest warrant's invalidity. In light of the defense's factual showing, these allegations do not present a material issue of fact as to the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

existence of a valid active warrant for plaintiff's arrest at the time of the October 1995 search. *See Kia P. v. McIntyre,* 235 F.3d 749, 763 (2d Cir.2000) ("A plaintiff may not survive a properly asserted motion for summary judgment on the basis of conclusory allegations alone.").

## 2. Reasonableness of the 1995 Entries

The inquiry does not end here. It is well settled that a law enforcement officer seeking to enter a suspect's home pursuant to an arrest warrant must have "reason to believe that the suspect is present." *Lauter,* 57 F.3d at 215; *accord United States v. Lovelock,* 170 F.3d 339, 344 (2d Cir.1999); *United States v. Big Apple Bag Co.,* 317 F.Supp.2d 181, 186 (E.D.N.Y.2004) (stating that the reasonable belief standard "has been interpreted to 'require[ ] a two-part inquiry: first, there must be a reasonable belief that the location to be searched is the suspect's dwelling, and second, the police must have 'reason to believe' that the suspect is within the dwelling.' ") (quoting *United States v. Magluta,* 44 F.3d 1530, 1533 (11th Cir.1995)). This standard has been interpreted in this Circuit as "less stringent than a probable cause standard." *Bartlett,* 2005 WL 887112, at *5 (citing, *inter alia, Lauter,* 57 F.3d at 215). Importantly, an officer's belief, although reasonable, need not be correct; thus, reasonable mistakes as to a suspect's presence or address will not give rise to a Fourth Amendment violation. *See Anderson v. United States,* 107 F.Supp.2d 191, 196 (E.D.N.Y.2000) (citing *Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987), and *Lovelock,* 170 F.3d at 342).

*20 Tucker contends that, at the time of the October 1995 search, he had a reasonable belief both that plaintiff resided in the Premises and that plaintiff was then present at the scene. *See* Tucker Mem. [# 215] at 14-16. Reed and Young, who deny that they were at the Premises at the time of the search, argue, in the alternative, that even assuming they were at the Premises, their behavior-like that of Tucker-would have been both reasonable and lawful. D.C. Mem. [# 227] at 4.[FN42] Accordingly, in reviewing the reasonableness of the October 1995 entry and search, this Court will assume that Tucker's beliefs were shared by Reed and Young.

> FN42. Those three defendants also assert a

defense of qualified immunity from liability for any violations of the Fourth Amendment. Tucker Mem. [# 245] at 21-24; D.C. Mem. [# 227] at 17-18. The qualified immunity defense is discussed *infra* pp. 51-54.

Tucker attests that he was aware of an August 1995 FBI lead that advised that plaintiff "may be located in the vicinity of '3 Star Grocery,' 2127 Pitkin Avenue, Brooklyn, New York," and that provided two telephone numbers for him. Tucker Mem. [# 215] Ex. A at 1.[FN43] Tucker further attests that surveillance was commenced at the Premises, "where Dockery was suspected of dwelling." Tucker Decl. [# 217] ¶ 7. Additionally, in connection with plaintiff's criminal prosecution in the D.C. Superior Court, Tucker testified that, prior to the search, he had learned that plaintiff owned the building at 2127 Pitkin Avenue and, moreover, believed that plaintiff's apartment was located on the second floor, "but it could have been anywhere in the building since he was the owner." [Testimony of Special Agent Nathan Tucker, D.C. Superior Court][FN44] (Ex. 6 to Plaintiff's Motion with New Facts for Appointment of Counsel ("Mot. to Appoint Counsel") [# 141] ) at 732; *see* attachment to Mot. Opposing Legal Aid [# 32] at 220) (testifying that plaintiff's residence was "the entire building"). According to Tucker, before entering the building to serve the arrest warrant, he determined which apartment was plaintiff's residence "by seeing him in the window on the second floor." Mot. to Appoint Counsel, Ex. 6 [# 141] at 732.

> FN43. Multiple portions of the FBI lead submitted by Tucker have been redacted.

> FN44. The Court is unable to ascertain whether the excerpted transcript is from plaintiff's criminal trial or from a related hearing.

If credited, the information in Tucker's affidavit and his trial testimony would ordinarily be sufficient to establish Tucker's reasonable belief that plaintiff resided in Apartment # 2F and that he could be found there upon entry. However, while plaintiff admits, in various sworn statements, that he resided in the building in Apartment # 2F, he denies that he was on the Premises at the time of the October 1995 entry and search, and he thus disputes

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

that Tucker saw him in the window of a second-floor apartment. *See* Dockery Dep. (Matthews Decl. [# 219] Ex. E) at 45. Apart from the disputed fact of Dockery's sighting in an apartment window, the defense cites no other evidence of plaintiff's suspected presence at the Premises. While plaintiff's denial is dubious at best,[FN45] the Court nevertheless must, for purposes of this summary judgment motion, construe the facts in the light most favorable to plaintiff as the non-moving party. Even assuming that defendant reasonably believed that plaintiff resided somewhere on the Premises, a material issue of fact exists with respect to the reasonableness of Tucker's belief that plaintiff would be found there at the time of the October 1995 search.

> FN45. That plaintiff was probably hidden in the Premises may be inferred from the fact that his identification was found in a crawl space during that search and that, in February 1996, he was located in the Premises, concealed in a specially constructed shelter between the floorboards of the second floor and the ceiling of the first floor. *See* Mot. Opposing Legal Aid [# 32] at 231-34.

**\*21** In the absence of uncontested evidence suggesting plaintiff's presence at the Premises, this Court cannot conclude that the ensuing entries alleged by plaintiff-to wit, Tucker's entry into the second-floor apartment in which plaintiff concededly resided, the basement, the grocery store, the two newly renovated apartments, and plaintiff's children's apartment-were reasonable as a matter of law.[FN46] *See Washington Square Post,* 720 F.Supp. at 351 n. 10 ("[I]f the entry was illegal, the subsequent searches ... would be tainted by this illegal entry.").

> FN46. Relying on *Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), the defense contends that law enforcement officers "had the right, based on the authority of the arrest warrant, to search anywhere in the house that [the suspect] might have been found ...." Tucker Mem. [# 215] at 16 (quoting *Buie,* 494 U.S. at 330); *see* D.C. Mem. [# 227] at 17. However, in *Buie,* in contrast to this case, the lawfulness of the entry itself was not in issue, as

a police department secretary had verified, by calling Buie's house, that Buie was present. *See Buie,* 494 U.S. at 328.

Moreover, in affirming the authority of the police, armed with an arrest warrant, "to search anywhere in [the suspect's] house" to effect his arrest, the Supreme Court in *Buie* did not address the authority of the police to search an entire multi-unit dwelling. Presumably, a judicial determination as to the reasonableness of police entries into different units of an apartment building would involve a series of separate analyses. In this case, the only stated basis for Tucker's belief that plaintiff was then on the Premises is the disputed proof of Tucker's having spotted Dockery in the window; hence, the Court need not address whether a showing short of "reasonable basis" would be sufficient to justify the police entry into portions of the Premises that were not Dockery's personal residence. It bears noting, however, that the level of justification mandated under *Payton* with respect to police entries into spaces other than a suspect's own residence "can be no greater than the 'reasonable basis' that would have been required had [the officers] arrested [the suspect] in his own home." *Big Apple Bag Co.,* 317 F.Supp.2d at 186 (Garaufis, J.) (citing *Payton,* 445 U.S. at 583-89 (discussing the sanctity of the home in contrast to other spaces), and *United States v. Haqq,* 278 F.3d 44, 54 (2d Cir.2002) (Meskill, J., concurring) ("While we are protected from unreasonable government intervention in our business, automobiles and in public, the protection we enjoy in these situations is far less than the ultimate protection we receive in our homes.")); *accord United States v. Elkins,* 300 F.3d 638, 646 (6th Cir.2002).

Whether plaintiff had a reasonable expectation of privacy in areas other than his own apartment is an issue not before this Court. *See supra* note 20.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

**3. Destruction of Property Claims**

Plaintiff contends that defendants engaged in an unreasonable search in violation of the Fourth Amendment by destroying fixtures in and portions of the Premises and by failing to secure the doors thereto, thus enabling looting by third parties. *See* 3d Am. Compl. at 5-9, 11. Plaintiff claims damages and losses in the amount of: $27,650 in missing personal property belonging to plaintiff, his children and his common-law wife; $32,300 in lost grocery stock; $2,300 in missing cash; $7,940 in damage to various doors; $5,600 in damage to the structure of the building and various fixtures; and $5,800 in missing electrical parts, supplies and wiring. *See id.* at 5-8. Tucker maintains that the search was reasonable under the Fourth Amendment and, moreover, that his conduct was consistent with 18 U.S.C. § 3109, which authorizes law enforcement officers to force entry under certain circumstances. Tucker Mem. [# 215] at 16-19. Reed and Young disclaim involvement in the entry into and search of the Premises, but again, in the alternative, adopt the version of events stated by Tucker. D.C. Mem. [# 227] at 5-6, 14-18.

Congress has recognized that in certain circumstances, law enforcement officers, in the course of their duty, may be constrained to force entry into various dwellings and spaces in order to execute warrants. Thus, pursuant to section 3109 of Title 18 of the United States Code, an officer is authorized to "break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance ...." 18 U.S.C. § 3109; *see also Cody v. Mello,* 59 F.3d 13, 16 (2d Cir.1995) ("[I]t is well recognized that 'officers executing search warrants on occasion must damage property in order to perform their duty.' ") (quoting *Dalia v. United States,* 441 U.S. 238, 258, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979)). While explicitly referencing only search warrants, the statute has been interpreted to apply to a "valid arrest pursuant to an arrest warrant in a residence ...." *Bartlett v. City of New York,* No. CV031961CPS, 2005 WL 887112, at *7 (E.D.N.Y. Feb.11, 2005) (quoting *United States v. Alejandro,* 368 F.3d 130, 133 (2d Cir.2004)) (other citations omitted). Importantly, contrary to Tucker's suggestion (*see* Tucker Mem. [# 215] at 17-18), an officer's compliance with

section 3109 in effecting a forced entry does not guarantee that the scope of the ensuing search will be deemed reasonable: "The general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of the warrant. [Accordingly,] [e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful ...." *United States v. Ramirez,* 523 U.S. 65, 71, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998) (internal citations omitted).[FN47]

FN47. *See* cases cited *supra* pp. 28-29.

**\*22** As previously discussed, the reasonableness of Tucker's entry turns on a material issue of fact with respect to plaintiff's presence on the day of the search.[FN48] This same disputed fact is also key to determining the reasonableness of the scope and manner of the resulting searches and any attendant destruction of property.[FN49] Accordingly, a material issue of fact exists as to whether the manner of executing the search violated the Fourth Amendment.[FN50]

FN48. *See supra* pp. 45-49.

FN49. For example, it appears that Tucker's claim that he saw Dockery through the window constitutes the defense justification for breaking down the door and for cutting holes in ceilings within the Premises.

FN50. In light of his claim that he was not present at the time of the 1995 search, and thus his resulting lack of personal knowledge regarding the condition of the Premises following the search, plaintiff will likely face an uphill battle in substantiating most of his alleged damages. Plaintiff belatedly proffers affidavits from various individuals concerning the alleged property damage. *See, e.g.,* Affidavit [of Ilma Davis], dated 2/22/00; Affidavit [of Everton Agustos], dated 11/10/03; Affidavit of George Crawford, dated 3/3/04; Affidavit [of Geanette Dunning], dated 6/19/04; Affidavit [of Creola Dunning], dated 6/26/04; and Affidavit of Tiara Bullock, dated 3/26/05 (all attached as exhibits

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

to Pl. Mem. (Tucker) [# 241] ); [Affidavit of Harris A. Harding], dated 6/14/01 (Ex. B5 to [Plaintiff's 9/5/05 Letter to Judge Mann] [# 259] ). Notably, however, several of these affidavits were submitted after the close of discovery, thereby unfairly depriving the defense of an opportunity to depose the affiants. *See* Tucker Reply [# 258] at 11-13. Others were submitted by individuals who, like plaintiff, lack personal knowledge of defendants' involvement in the acts alleged, as they were not present at the Premises. The Court need not now resolve defendants' motion to strike those affidavits; even if the challenged affidavits are disregarded in connection with the pending dispositive motions, the defense is not entitled to summary judgment on the Fourth Amendment claims. The admissibility of the affiants' testimony at trial may, however, be an appropriate subject for an *in limine* motion.

**4. Qualified Immunity**

Tucker and the D.C. defendants further argue that even if a Fourth Amendment violation had occurred in connection with the 1995 search, they are entitled to summary judgment on qualified immunity grounds. Specifically, they contend that they may not be held liable because a reasonable officer at the scene would have viewed a forced entry and unannounced search of the Premises as objectively reasonable in light of the circumstances then confronting him. *See* Tucker Mem. [# 215] at 23-24; D.C. Mem. [# 227] at 14-18.[FN51]

FN51. In *Harlow v. Fitzgerald,* the Supreme Court announced the often-invoked standard for qualified immunity. The Court explained that qualified immunity protects "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "Under the *Harlow v. Fitzgerald* standard, a government official sued in his individual capacity is entitled to qualified immunity in any of three circumstances: (1) if the

conduct attributed to him is not prohibited by federal law; or (2) if that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct; or (3) if the defendant's action was 'objective[ly] legal[ly] reasonable[ ] ... in light of the legal rules that were clearly established at the time it was taken.' " *X-Men Sec., Inc. v. Pataki,* 196 F.3d 56, 65-66 (2d Cir.1999) (alterations in original) (quoting *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (other internal citations omitted).

In reviewing a summary judgment motion, a court should ordinarily grant the motion based on qualified immunity where " 'no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant[ ]' to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995) (alteration in original) (quoting *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987)); *see also Bartlett,* 2005 WL 887112, at *10. Summary judgment based on immunity should not be granted, however, where material issues of fact frustrate the Court's review of the reasonableness of the actions in question. *See, e.g., Breen v. Garrison,* 169 F.3d 152, 153 (2d Cir.1999) (per curiam) (reversing finding of qualified immunity in light of material differences in the parties' versions of the facts regarding plaintiff's excessive force claim); *Armstead v. Township of Upper Dublin,* No.Civ.A. 03-CV-3608, 2004 WL 2743451, at *4 (E.D.Pa. Nov.23, 2004).

"The question of qualified immunity is independent from the merits of the underlying action and must be examined independently of the underlying claims." *Bartlett,* 2005 WL 887112, at *9 (citing *Saucier v. Katz,* 533 U.S. 194, 207, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Accordingly, this Court's earlier determination that a material question of fact exists as to the lawfulness of the 1995 search does not necessarily foreclose entry of summary judgment based on qualified immunity. Nevertheless, such relief is inappropriate in the instant

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

case, as the qualified immunity defense is based upon the same disputed facts as the defense to the underlying Fourth Amendment claims.

The defendants do not dispute that the Fourth Amendment law governing plaintiff's unlawful entry and destruction of property claims was clearly established at the time of the October 1995 search. To the contrary, the defense argues that the search of the Premises-even if forced and destructive to plaintiff's property-was lawful in light of the attendant circumstances. *See* Tucker Mem. [# 215] at 23-24. However, contrary to the premise of the defense motion, defendants' argument is predicated on a set of facts that in fact are disputed by plaintiff. Indeed, because a material issue of fact exists as to whether plaintiff was seen at the Premises just before the entry, it cannot be determined whether a reasonable officer in Tucker's position would have believed that urgent and forcible action was necessary to prevent plaintiff's escape. Accordingly, summary judgment on the basis of qualified immunity is not appropriate in this case. *See Breen,* 169 F.3d at 152; *Arum v. Miller,* 331 F.Supp.2d 99, 110-11 (E.D.N.Y.2004) (denying qualified immunity to police officers on plaintiff's excessive force claim in light of the "significant dispute" as to the conduct of the officers during the arrest); *see also Hudson v. New York City,* 271 F.3d 62, 66 (2d Cir.2001) (noting that Judge Ross had properly denied a defense motion for summary judgment on qualified immunity grounds where "the key facts surrounding the question of whether there was sufficient basis upon which a reasonable officer might find probable cause to enter [plaintiff's] apartment [ ] remain in dispute.").

**E. *Monell* Claims**

**\*23** In his *Monell* claims, plaintiff seeks to hold the District liable for the actions of Reed and Young based on an alleged "Municipal policy, practice or custom that violated the Fourth Amendment ...," and on the District's alleged "failure to adequately train, d[i]scipline and supervise [ ] its homicide Officers in matters of extrajurisdictional searches, seizure, and arrest[.]" 3d Am. Compl. at 12-13; *see id.* at 14-15. Plaintiff also asserts *Monell* claims based on the District's alleged violation of plaintiff's due process rights.3d Am. Compl. at 13-14,

15-16.[FN52] Plaintiff's *Monell* claims should not be permitted to survive summary judgment.

> FN52. Plaintiff's due process claim against Reed and Young is discussed *supra* pp. 26-30.

In recognition of the unique burdens that litigation poses to municipalities, whose liability for damages is paid by taxpayer dollars, the Supreme Court has limited municipal liability to those cases in which the government officials or officers may be said to have been executing municipal custom or policy that "actually caused" the alleged violations. *City of Canton v. Harris,* 489 U.S. 378, 385-91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Thus, a plaintiff may sustain a claim against a municipality under section 1983 if she proves the existence of a municipal custom or policy the enforcement of which was "the moving force behind the constitutional violation." *Id.* at 389 (internal quotation marks omitted).

Dockery alleges that the District is liable for his injuries on account of its failure to train, discipline and supervise its homicide officers. 3d Am. Compl. at 12-14. Even assuming *arguendo* that plaintiff's allegations have been adequately pled, *see generally* Fed.R.Civ.P. 8(a)(2); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 167-68, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Walker v. City of New York,* 974 F.2d 293, 297-99 (2d Cir.1992), they have not been substantiated by admissible evidence. Despite having obtained discovery from the District,[FN53] plaintiff fails to point to a specific policy, custom, practice, decision or ordinance, or any training or supervising deficiency, that caused his constitutional rights to be violated. *See, e.g., Monell,* 436 U.S. at 694; *City of Canton,* 489 U.S. at 388 (a mere failure to supervise employees or to provide proper training is not actionable unless the failure is so severe as to constitute "deliberate indifference" to the deprivation of plaintiff's rights). Instead, plaintiff relies upon an array of newspaper articles and judicial decisions discussing general police misconduct, and he assumes from this that there existed a pattern of misconduct that was or should have been "so obvious" to the District as to put it on notice that future violations were likely to occur absent remedial action. Pl. Mem. (D.C.) [# 246] at 14-22; *see City of Canton,* 489 U.S. at 390 n. 10. Plaintiff misconstrues the value and admissibility of the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

information proffered.

FN53. Earlier in this case, this Court bifurcated discovery and trial on plaintiff's *Monell* claims against the District. *See* 1/27/00 Memorandum and Order [# 120] at 6-7. The District nevertheless did not object to plaintiff's discovery demands regarding municipal policies and training programs, and instead provided the disclosure sought. *See, e.g.,* Defendants Pam Reed's and Phineas Young's Response [to] Plaintiff's First Set of Request[s] for the Production of Documents (attached as Ex. D to Pl. Mem. (D.C.) [# 246] ). In light of this exchange, the Court reopened discovery on June 27, 2003 "for the limited purpose of allowing plaintiff to serve discovery demands on defendants Soulsby and Dreher." 6/27/03 M & O [# 155]. As plaintiff sought and obtained discovery on his *Monell* claims, he will not be unfairly prejudiced by the Court's consideration of the District's challenge to those claims.

The cases upon which plaintiff relies address a wide range of police conduct, from car ride-alongs and stops to false arrest, the majority of which is inapposite to the conduct at issue in this case. *See* Pl. Mem. (D.C.) [# 246] at 15-17. Further, although plaintiff maintains that the very existence of the cited cases demonstrates the District's failure to investigate claims made against its officers, *see id.* at 17-18, no conclusion may reasonably be drawn from most of the cases as to the extent of any investigation by the District into alleged misconduct or as to the existence of any disciplinary action. Plaintiff erroneously assumes from the facts alleged by the plaintiffs in those cases that the police engaged in misconduct. In fact, the existence of the lawsuits cited by plaintiff establishes "no more than notice to the city that allegations had been made." *Carter v. District of Columbia,* 795 F.2d 116, 123 (D.C.Cir.1986). Plaintiff's reliance on a *Washington Post* newspaper article, *see* Unmarked Ex. to Pl. Mem. (D.C.) [# 246], which described a suit charging police misconduct in connection with mass arrests of protesters at a demonstration in 2002, is likewise unavailing, as the alleged misconduct bears no resemblance to the allegations in this case and, moreover, occurred more than

six years after the events at issue here.

**\*24** For purposes of a *Monell* claim, the "catalog of disquieting events [submitted by plaintiff] is not sufficient to demonstrate a pervasive pattern of police officer indulgence in [unreasonable searches and seizures], persisting in the District because of the [D.C. Police Department's] tacit approval." *Carter,* 795 F.2d at 123. Indeed, "[i]f the evidence plaintiff [ ] presented here were adequate to make out a § 1983 case, then practically every large metropolitan police force, it would seem, could be targeted for such liability." *Id.; see generally Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 129 (2d Cir.2004) (affirming grant of summary judgment where plaintiffs, in an action against a town for failure to train its police force, had "neglected to offer any evidence ... as to the purported inadequacies in the Town's training program and the causal relationship between those inadequacies and the alleged constitutional violations."); *Hudson,* 271 F.3d at 66, 67 n. 6 (affirming Judge Ross' granting of defense motion for summary judgment on *Monell* claim on the ground that plaintiff "had not adduced evidence that any of the City's practices or policies contributed to, or caused, the allegedly unconstitutional search."); *Sagendorf-Teal v. County of Rensselaer,* 100 F.3d 270, 276-77 (2d Cir.1996) (affirming grant of summary judgment in favor of County where "the trial court was not presented with any evidence or allegation of an official policy" pursuant to *Monell* ); *Washington Square Post,* 720 F.Supp. at 343-45 (granting the City summary judgment on *Monell* claims).

As plaintiff has failed to present any evidence from which a reasonable juror could conclude that the District was the moving force behind any violation of his constitutional rights, the District's motion for summary judgment on the *Monell* claims should be granted.

**F. Tort Claims against Reed, Young, and the District for 1995 Search**

Plaintiff alleges that, following their unreasonable and unauthorized search of the Premises, Reed, Young and the District "intentionally and maliciously" failed to replace doors and locks to the Premises, thereby causing the "loss of [plaintiff's] business and private property." 3d Am. Compl. at 10. Liberally construing plaintiff's complaint, he appears to assert common law claims against those D.C.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

defendants based on the tort theories of trespass to chattels, trespass to land, and conversion. *See id.;* 4/28/05 M & O at 5-6 n. 5. The D.C. defendants seek summary judgment on these claims, on the ground that plaintiff fails to establish any wrongful conduct on their part, falsely alleges that defendants left the Premises unsecured, and, further, cannot prove "the origin or value of the allegedly lost property." D.C. Mem. [# 227] at 18-20.

Under New York law, which would appear to apply to plaintiff's common law tort claims arising out of acts occurring in New York,[FN54] a plaintiff may establish trespass to land where he proves "an unauthorized entry upon private property." *Rager v. McCloskey,* 305 N.Y. 75, 79, 111 N.E.2d 214 (1953). "To state a claim for trespass to chattels under New York law, plaintiffs must establish that defendants 'intentionally, and without justification or consent, physically interfered with the use and enjoyment of personal property in [plaintiffs'] possession,' and that plaintiffs were thereby harmed." *In re Jetblue Airways Corp. Privacy Litig.,* 379 F.Supp.2d 299, 327 (E.D.N.Y.2005) (citing *Kuprewicz,* 771 N.Y.S.2d at 807). Finally, " '[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.' " *Thyroff v. Nationwide Mut. Ins. Co.,* 460 F.3d 400, 2006 WL 2391162, at *3 (2d Cir. Aug.21, 2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.,* 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 660 N.E.2d 1121 (1995) (internal quotation marks omitted)).

FN54. New York is the state with the strongest interest in adjudicating alleged torts committed against its citizens within the state's boundaries. *See AroChem Int'l, Inc. v. Buirkle,* 968 F.2d 266, 270 (2d Cir.1992) ("In tort actions [presenting choice of law questions], New York applies a so-called interest analysis .... Under such an analysis, the law of the jurisdiction having the greatest interest in the litigation applies.") (internal citations omitted). "[T]he significant factors for this analysis are the parties' domiciles, and the locus of the tort." *Lee v. State of New York Dep't of Corr. Servs.,* No. 97 Civ. 7112(DAB), 1999 WL 673339, at *3 (S.D.N.Y. Aug.30, 1999).

*25 In the present case, for the same reasons that apply to the Court's Fourth Amendment analysis of the reasonableness of defendants' entries into and searches of the Premises,[FN55] summary judgment is inappropriate with respect to plaintiff's tort claims against Reed, Young and the District. Because the parties' dispute over plaintiff's presence at the Premises poses material issues of fact as to the lawfulness of defendants' entry, the Court cannot find as a matter of law that defendants' forced entry and search, which resulted in damage to plaintiff's real property, was "authorized" and, thus, was not a trespass. *See Voskerchian v. United States,* No. 98-CV-0335E(M), 1999 WL 66709, at *4 (W.D.N.Y. Feb.10, 1999) ("New York cases support the proposition that a law enforcement officer's privilege [to trespass pursuant to a warrant] remains limited to constitutional searches and seizures.") (citing *1090 Jericho Corp. v. Elias,* 164 A.D.2d 852, 559 N.Y.S.2d 358, 361 (2d Dep't 1990) (affirming the denial of law enforcement officers' motion to dismiss trespass claim premised upon a search executed pursuant to an allegedly invalid warrant), and *People v. Johnson,* 66 N.Y.2d 398, 414, 497 N.Y.S.2d 618, 488 N.E.2d 439 (1985) (Titone, J., concurring).[FN56] Summary judgment dismissing the tort claims against these defendants is thus inappropriate at this juncture.[FN57]

FN55. *See supra* pp. 45-51.

FN56. However, as discussed in the next section of this opinion, plaintiff's tort claims and constitutional claims all suffer from the same flaw with respect to plaintiff's demand for damages for loss of business. In addition, because real property and the fixtures attached thereto cannot properly be characterized as chattels or personal property, *see Roemer & Featherstonhaugh, P.C. v. Featherstonhaugh,* 267 A.D.2d 697, 699 N.Y.S.2d 603 (3d Dep't 1999) ("[Where] the property claimed to have been converted is real property ... conversion will not lie."), plaintiff cannot state a claim for either trespass to chattels or conversion with respect to the damage he alleges was caused to the doors and ceilings of his building, or to other fixtures.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

FN57. As defendants have neither raised nor briefed the issue, the Court will not here opine on the cognizability of a tort claim against defendants for the criminal acts of third parties in allegedly looting the Premises.

### G. Damages for Loss of Business

In his third amended complaint, plaintiff suggests that defendants caused a loss of business profits by unlawfully entering and searching his grocery store, and by leaving the entrance doors to it unreplaced, thereby allowing looting by third parties and damage to plaintiff's business. *See* 3d Am. Compl. at 5, 17-18. Plaintiff estimates his losses at $563,942 in past profits and $1,800,000 in future profits. *See id.*FN58 Defendants challenge plaintiff's demand for damages, denying that their conduct was tortious or unlawful and further asserting that plaintiff has failed to provide any evidence in support of his claim for damages. *See* Tucker Mem. [# 215] at 19-21; D.C. Mem. [# 227] at 18-19.FN59 Even assuming that plaintiff could prove that defendants' conduct was unlawful, he still could not recover damages for lost profits, as the losses he alleges are entirely speculative.FN60

FN58. Plaintiff's pleading asserts that the loss of "private property and destruction of private premises" totals $40,800 for the grocery store and $37,690 for "the premises and apartments ...." 3d Am. Compl. at 18. Plaintiff miscalculates the sum of these figures as $78,690 in damages for loss of property.

FN59. Defendants maintain in the alternative that if plaintiff's lawsuit is permitted to proceed, additional discovery in the form of records from the State of New York will be required to verify plaintiff's ownership of the Three Star Grocery store. *See* Tucker Mem. [# 215] at 18; [D.C.'s] Affirmation in Opposition to Plaintiff's Motion for Third Amended Complaint to Conform with Evidence [# 169] at 6-7; 4/28/05 M & O [# 207] at 13.

FN60. To the extent that plaintiff attempts to base his demand for lost profits on his continued imprisonment, this demand is futile, as plaintiff may not challenge his conviction and prison sentence in this proceeding.

A plaintiff who seeks to recover for lost profits or business income must first demonstrate that the damages alleged "result as the natural consequences of a breach of contract or the commission of a tortious act." *Levine v. Am. Fed. Group, Ltd.,* 180 A.D.2d 575, 580 N.Y.S.2d 287, 288 (1st Dep't 1992) (citation omitted); *see Merlite Indus., Inc. v. Valassis Inserts, Inc.,* 12 F.3d 373, 376 (2d Cir.1993) (citing *Kenford Co. v. County of Erie,* 67 N.Y.2d 257, 260, 502 N.Y.S.2d 131, 493 N.E.2d 234 (1986)); *Media Logic Inc. v. Xerox Corp.,* 261 A.D.2d 727, 689 N.Y.S.2d 762, 766 (3d Dep't 1999) ("[Plaintiff's] ... failure to prove the causal relationship between defendant's conduct and the alleged damage necessitated a dismissal of this damage claim.") (internal citations omitted). Additionally, the plaintiff must prove damages with "sufficient certainty," such that damages are not merely "speculative or contingent." *Levine,* 580 N.Y.S.2d at 288; *see Kenford,* 67 N.Y.2d at 261, 502 N.Y.S.2d 131, 493 N.E.2d 234 (reviewing a breach of contract claim and stating that damages alleged must not be "speculative" and must be calculated with "reasonable certainty"); *Caulfield v. Barristers Abstract Corp.,* No. 91 CV 5155, 1996 WL 382633, at *1 (E.D.N.Y. July 2, 1996) (declining to award damages to plaintiff under the federal RICO statute, 18 U.S.C. § 1964(c), "[b]ecause plaintiff ha[d] not furnished the Court with any evidentiary support for the Court to begin calculating any damage award ...."); *Ashland Mgmt. v. Janien,* 82 N.Y.2d 395, 403, 604 N.Y.S.2d 912, 624 N.E.2d 1007 (1993) ("The law does not require that [damages] be determined with mathematical precision. It requires only that damages be capable of measurement based upon known reliable factors without undue speculation."). As part of this burden, a plaintiff must also provide a reasonable means of and basis for calculating damages. *See Mehta v. New York City Dep't of Consumer Affairs,* 162 A.D.2d 236, 556 N.Y.S.2d 601, 602 (1st Dep't 1990). New businesses face a "higher evidentiary burden in satisfying this standard 'for the obvious reason that there does not exist a reasonable basis of experience upon which to estimate lost profits with the requisite degree of reasonable certainty.' " *Kidder, Peabody & Co. v. IAG Int'l,* 28 F.Supp.2d 126, 131 (S.D.N.Y.1998) (quoting *Kenford,* 67 N.Y.2d at 261, 502 N.Y.S.2d 131, 493 N.E.2d 234). Indeed, New York courts have held that

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

lost profits ordinarily will not be awarded unless the business is "firmly established and in operation for a definite period of time." *Sam & Mary Housing Corp. v. Jo/Sal Mkt. Corp.,* 121 Misc.2d 434, 468 N.Y.S.2d 294, 301 (Sup.Ct. Queens County 1983).

**\*26** In the instant case, plaintiff arrives at his lost past and future profits by extrapolating from the $18,877 in profits he allegedly earned during the first six months of the store's operation in 1994.3d Am. Compl. at 17. Plaintiff further calculates a 10 percent rate of growth from his estimated yearly profit totals to state annual profits ranging from $41,529 to $89,021 for the years 1995 through 2003. *Id.* As the sole evidence in support of his proposed method of calculation, plaintiff submits a tax return for [1994 Tax Return] (attached to 3d Am. Compl. [# 154] ).[FN61] Plaintiff fails, however, to prove that his loss was the "natural consequence[ ]" of defendants' constitutional or common law torts. *Levine,* 580 N.Y.S.2d at 288.

> FN61. As pages of the transcript from plaintiff's deposition have been omitted from Tucker's submissions to this Court, it is unclear from the record whether this tax return was filed with the Internal Revenue Service.

In calculating his lost profits, plaintiff ignores the fledgling nature of his business. Because plaintiff's store-which at most reported only six months of profits in 1994 and apparently no profits in 1995[FN62]-can in no way be deemed "firmly established," plaintiff cannot meet the high evidentiary burden that attends his demand for lost profits. *Sam & Mary Housing Corp.,* 468 N.Y.S.2d at 301; *see Kenford,* 67 N.Y.2d at 261, 502 N.Y.S.2d 131, 493 N.E.2d 234. Indeed, the conclusion that the store's profits are incapable of prediction with "reasonable certainty" is supported by plaintiff's own submissions. For example, plaintiff testified at his deposition that he closed the store for at least part of 1995 while he applied for business licenses and insurance, and addressed other problems. *See* Dockery Dep. [# 219] at 34, 80-81 (Matthews Decl. Ex. E); *see also* 8/18/05 Pl. Aff. [# 246] ¶ 3 ("On October 23, 1995, the Three Star[ ] Grocery Store was operable, but it was closed to the public when the police [broke in], because ... plaintiff had to go and

take care of other business."). This interruption in business is not, however, reflected in plaintiff's lost profits estimate. Even more importantly, in forecasting the store's earnings, plaintiff overlooks the potentially detrimental impact of his extended incarceration and absence from the store, to say nothing of market conditions or competition.[FN63]

> FN62. Although the 1995 search did not occur until the end of October, plaintiff has proffered no evidence as to the store's profits during the first nine months of that year.

> FN63. Contrary to defendants' characterization of the record, plaintiff acknowledges the existence of various receipts for stock and purchases related to his grocery store. *See* Pl. Dep. [# 219] at 80-81. Plaintiff maintains, however, that he cannot provide defendants with these receipts, as they were seized by law enforcement officers during an August 1995 search of plaintiff's Maryland residence. *Id.;* 7/5/01, 699 N.Y.S.2d 603 Pl. Aff. (attached as Ex. L to Pl. Mot. Appt. of Counsel [# 141] ) at 1 ("On August 10, 1995, numerous FBI agents, D.C. police officers and Maryland State Police conducted a search at 4165 Southern Avenue, Apt # T2, and seized all [of plaintiff's] personal business documents for his Three Star[ ] Grocery Store .... [Plaintiff] ... made numerous motions in Court [seeking the] return of his property business documents, but all his efforts were without success."). Because the disputed receipts and business documents would not alter the Court's conclusion that the grocery store has an insufficient record of past earnings from which to calculate lost profits, the Court need not address plaintiff's contention that potential documentary evidence was wrongfully seized from him.

On this record, no rational fact-finder could calculate with "reasonable certainty" the profits that would be owed to plaintiff as a result of any wrongful conduct by defendants. Accordingly, this Court recommends that defendants be granted summary judgment with respect to plaintiff's damages claim for lost profits. *See Schonfeld v. Hilliard,* 218 F.3d 164, 172-73 (2d Cir.2000) (affirming

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)

(Cite as: 2006 WL 5893295 (E.D.N.Y.))

the district court's granting of summary judgment against plaintiff in a breach of contract action where lost profits could not be determined with "reasonable certainty").

### III. *Plaintiff's Cross-Motions for Summary Judgment*

Plaintiff, without legal argument, cross-moves, in the concluding paragraphs of his opposition papers, for summary judgment on all claims asserted in his third amended complaint. *See* Pl. Mem. (Tucker) [# 241]; Pl. Mem. (D.C.) [# 246]. Although plaintiff was not required to provide further affidavits in support of his cross-motion,[FN64] he submitted two additional affidavits summarizing his version of the events in question. *See* 8/18/05 Affidavit of Jasper Dockery in Support of Cross Motion for Summary Judgment on Complaint (unmarked exhibit to Pl. Mem. (D.C.)); 8/3/05 Plaintiff Affidavit in Support of Cross-Motion for Summary Judgment (unmarked exhibit to Pl. Mem. (Tucker)). These affidavits are largely redundant of plaintiff's earlier submissions in this case and add little, if anything, to the record before the Court. Moreover, when read in tandem with plaintiff's briefs opposing defendants' dispositive motions, plaintiff's affidavits merely underscore the disputed nature of the material facts underlying his Fourth Amendment and common law tort claims.

> FN64. *See* Fed.R.Civ.P. 56(a) ("A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may ... move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.").

**\*27** Most importantly, each of the claims that are the subject of plaintiff's cross-motion have already been addressed in this opinion and are either without merit, are worthy of summary judgment in favor of defendants, or are attended by material issues of fact that preclude summary judgment in favor of either party. For the aforesaid reasons, plaintiff's cross-motions should be denied in their entirety.

### *CONCLUSION*

For the reasons set forth above, it is the recommendation of this Court that defendants' motions to dismiss and for summary judgment on plaintiff's third amended complaint be granted in part and denied in part, and that plaintiff's cross-motions for summary judgment be denied in their entirety.

Specifically, this Court recommends dismissal of plaintiff's tort claim against Tucker, his claims concerning the constitutional rights of his children and Ilma Davis, and his official capacity claims against Dreher and Soulsby. This Court further recommends that defendants be granted summary judgment with respect to plaintiff's due process claims, his demand for lost profits, his individual capacity claims against Dreher and Soulsby, and his *Monell* claims, but that defendants be denied summary judgment with respect to plaintiff's Fourth Amendment claims against Tucker, Reed, and Young, and the common law tort claims against Reed, Young and the District. Finally, plaintiff's cross-motions should be denied in their entirety.

Any objections to the recommendations contained herein must be filed with the Honorable Allyne R. Ross on or before September 19, 2006. Failure to file objections in a timely manner may waive a right to appeal the District Court order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989).

The Clerk is directed to docket and file this Order via ECF, and to mail a copy to plaintiff (# 39631053) at U.S. Penitentiary, P.O. Box 2099, Pollock, LA 71462.

**SO ORDERED.**

E.D.N.Y.,2006.

Dockery v. Tucker
Not Reported in F.Supp.2d, 2006 WL 5893295 (E.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 222603 (W.D.N.Y.)

(Cite as: 1999 WL 222603 (W.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Christine CIANCIO, Plaintiff,

v.

Dennis GORSKI, Erie County Executive, Deborah
Merrifield, Commissioner of DSS, Joan Guarino, 1st Deputy
Commissioner of DSS, Richard Angrisano, Chief Personnel
Supervisor Erie County Dept. Personnel, Frank DeCarlo,
Special Investigator (SID), Kevin Duggan, Director of Heap
and Energy, Marcia Olszewski, Caseworker/Section
President Local 815, and Valarie Redden, Energy Crisis
Worker # 2 Heap, Defendants.
No. 98-CV-0714E(SC).

April 14, 1999.
Judge John T. Elfvin, Pro Se, Kenmore, for the Plaintiff.

Olszewski-Timothy Connick, Esq., c/o CSEA, Inc., Albany,
Remaining Defendants-Kristin Klein Wheaton, Esq., Asst.
County Attorney, Buffalo, for the Defendant.

MEMORANDUM and ORDER

ELFVIN, S.D.J.

*1 Plaintiff Ciancio, proceeding *pro se,* commenced this
action November 12, 1998 by filing a Complaint containing
claims under Title VII of the Civil Rights Act of 1964.
Presently before this Court are Olszewski's December 14, 1998
motion to dismiss the Complaint as to her and the remaining
defendants' January 5, 1998 motion to dismiss the Complaint
as to them, each of which is brought pursuant to Rule 12(b) of
the Federal Rules of Civil Procedure ("FRCvP"). For the
reasons hereinbelow stated, Olszewski's motion will be granted
and the others' will be granted in part and denied in part.

According to the Complaint and attachments thereto,
Ciancio was denied promotion by the County of Erie to two
positions at the County's Department of Social Services in
October 1997. Complaint, at 6-7 & Charges of Discrimination
attached thereto.[FN1] Previously, she had filed a charge with the
Equal Employment Opportunity Commission ("the EEOC") in

May of 1997 alleging discrimination by the County. *Id.* at 3. It
is unclear what had been the subject of the earlier charge and
whether and/or how it had been resolved. Ciancio filed the
charge from which this action stems on January 16, 1998
claiming that the County's and/or the Department's failure to
promote her constituted retaliation for her previous filing of an
EEOC charge; she amended that charge February 5, 1998 to
add a claim of race discrimination based upon the same events.
After having received a right-to-sue letter from the EEOC on
August 15th, Ciancio timely commenced this action, claiming
that the failure to promote her was motivated by retaliatory
animus and/or by discrimination on the basis of her race, color,
national origin, age and/or an unspecified disability. *Id.* at 4.

All defendants contend that the Complaint should be
dismissed because individuals may not be sued under Title
VII-see *Tomka v.. Seiler Corp.,* 66 F.3d 1295, 1313-1317 (2d
Cir.1995)-and Ciancio has named only individuals as
defendants herein. This Court agrees, except with respect to
defendant Gorski, who is sued herein as "Erie County
Executive," and defendant Merrifield, who is sued as
Commissioner of Social Services. Construing the Complaint
liberally in light of the plaintiff's *pro se* status-see *Haines v.
Kerner,* 404 U.S. 519, 520 (1972) (per curiam)-, this Court
finds that the plaintiff's naming of Gorski and Merrifield
sufficiently names the County and the Department and brings
such entities before this Court as defendants. See *Kentucky v.
Graham,* 473 U.S. 159, 165-167 (1985) (discussing
"official-capacity" suits). [FN2] Accordingly, the plaintiff's Title
VII claims against Gorski and Merrifield in their official
capacities will not be dismissed for that reason. Although such
defendants have not addressed the question, it is not clear that
an official-capacity suit is the proper vehicle for recovery
under Title VII. *See, e.g., Gray v. Shearson Lehman Bros.,
Inc.,* 947 F.Supp. 132, 136 (S.D.N.Y.1996) (finding that
official-capacity suits are not proper under Title VII) (citing
cases). The County, of course, may properly be made a
defendant in a Title VII suit-42 U .S.C. § 2000e(a, b)-and any
recovery against the Department (assuming that it is a separate,
suable entity) would doubtless be paid by the County.
Therefore, in the interest of eliminating undue complication
without affecting the substantial rights of the parties, this Court
will *sua sponte* substitute the County as the defendant in this

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 222603 (W.D.N.Y.)

(Cite as: 1999 WL 222603 (W.D.N.Y.))

action in the place and stead of Gorski and Merrifield. FRCvP 21 ("[p]arties may be dropped or added by order of the court on motion of any party or on its own initiative at any stage of the action and on such terms as are just"); *Cimemotion NV v. Lorimar-Telepictures Corp.,* 1989 WL 120083, *6 (S.D.N.Y. Oct. 5, 1989)* (non-party over whom court could exercise personal jurisdiction would be added as a defendant *sua sponte* under FRCvP 21 "in the interest of the efficient administration of justice").

**\*2** However, to the extent that Ciancio seeks to advance claims against CSEA Local 815 by naming Olszewski, she must fail. Such union was not named as a respondent in her EEOC charge and the plaintiff has not demonstrated that the union had an identity of interest with her employer which might warrant disregarding the failure to have raised any charge against it before the EEOC. *See Vital v. Interfaith Medical Center,* 168 F.3d 615, 1999 WL 76804, *3-*4 (2d Cir. Feb. 19, 1999).*[FN3] There is also no evidence that the union had known about Cianco's EEOC charge or had participated in any investigation or conciliation effort that may have ensued. Furthermore, construing the Complaint to assert a claim for breach of the union's duty of fair representation pursuant to section 301 of the Labor Management Relations Act would be futile, as such a claim would be barred by the applicable six-month limitations period. *Id.* at *4.

The individual employees and representatives of the County also seek to strike "any reference to punitive damages in plaintiff's complaint." Defendants' Memorandum of Law filed January 5, 1998, at 5. This Court finds no reference in the Complaint to punitive damages-the form complaint utilized by Ciancio states that appropriate "injunctive orders, damages, costs and attorney's fees" are requested-, but Ciancio strongly opposes such aspect of the defendants' motion, arguing that "bla[t]ant discrimination with malic[ious] intent can not be taken lightly." Affidavit of Christine Ciancio sworn to January 26, 1999, at 6. However, under the Civil Rights Act of 1991, punitive damages are not available against a municipal entity that has violated Title VII, regardless of the egregiousness of such defendant's (or its agent's) discriminatory or retaliatory conduct. 42 U.S.C. § 1981a(b)(1). Therefore, to the extent that Ciancio seeks to recover the same, she is precluded therefrom.

Finally, this Court lacks jurisdiction over the plaintiff's claims premised upon alleged discrimination on the basis of

national origin, age and disability because Ciancio did not include such in either her original administrative charge or the amended charge and because those claims are not "reasonably related" to the claims raised therein. *See Butts v. City of New York Dept. of Housing,* 990 F.2d 1397, 1402-1403 (2d Cir.1993). Furthermore, age and disability discrimination are not actionable under Title VII-such are within the purview of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, and the Americans with Disabilities Act, 42 U.S .C. §§ 12101-12213, respectively.[FN4] However, the Court finds that Cianco's claim of discrimination on the basis of her color is sufficiently similar to her race discrimination claim that the exercise of jurisdiction over that claim is appropriate.

Accordingly, it is hereby *ORDERED* that defendant Olszewski's motion to dismiss is granted, that the remaining defendants' motion to dismiss is granted in part and denied in part, that all claims in the Complaint are dismissed except for the plaintiff's claims under Title VII of the Civil Rights Act of 1964 for discrimination on the basis of race and/or color and for retaliation against defendants Gorski and Merrifield in their official capacities, that the County of Erie is substituted in the place and stead of Gorski and Merrifield, that the County shall serve and file an Answer within 30 days of the entry of this Order and that the caption in this action shall be amended to read:

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 222603 (W.D.N.Y.)

(Cite as: 1999 WL 222603 (W.D.N.Y.))

"CHRISTINE CIANCIO,

Plaintiff,

-vs-

COUNTY OF ERIE,

Defendant."

FN1. The plaintiff now states that only one position is at issue because the second position was temporary in nature. Affidavit of Christine Ciancio sworn to January 26, 1999, at 2.

FN2. The Court notes that the individual representatives and employees of the County, including Gorski and Merrifield, are represented herein by the County Attorney.

FN3. The plaintiff argues that this Court may consider communications to EEOC officials in which she had identified allegedly unlawful conduct which had not been included in the administrative charge. *See Barone v. Hackett,* 602 F.Supp. 481, 484 (D.R.I.1984) (defendant who was identified and alleged to have discriminated against plaintiff in an EEOC Intake Questionnaire but not in the charge could be sued under the circumstances of that case). Whether or not such proposition is correct, Ciancio has presented nothing that would indicate that she had identified to the EEOC any conduct by the union or Olszewski which is alleged to have been unlawful.

FN4. This Court notes that the defendants also argue that individuals are not liable under the Age Discrimination in Employment Act or the Americans with Disabilities Act. While that contention need not be addressed, the undersigned disapproves of their having relied primarily upon and cited the Court to the unpublished decision of our Court of Appeals in *Martin v. Chemical Bank,* 129 F.3d 114 (Table), 1997 WL 701359 (Nov. 10, 1997), which-pursuant to section 0.23 of the Rules of the Second Circuit-"shall not be cited or otherwise used in unrelated cases before this or any other court." The parties are admonished to comply with such rule in the future and with similar rules in other Circuits.

W.D.N.Y.,1999.

Ciancio v. Gorski
Not Reported in F.Supp.2d, 1999 WL 222603 (W.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.